UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRONTIER FISHING CORP. | ) | CIVIL ACTION |
| | ) | NO.04-11171-DPW |
| Plaintiff, | ) | |
| v. | ) | **PLAINTIFF'S MOTION** |
| | ) | **TO SUPPLEMENT THE** |
| DONALD EVANS, Secretary of the | ) | **ADMINISTRATIVE RECORD** |
| UNITED STATES DEPARTMENT OF | ) | **OR TO CONDUCT DISCOVERY** |
| COMMERCE; AND CONRAD C. | ) | |
| LAUTENBACHER JR. UNDER SECRETARY | ) | **ORAL ARGUMENT** |
| FOR OCEANS AND | ) | **REQUESTED** |
| ATMOSPHERE/ADMINISTRATOR AND | ) | |
| DEPUTY UNDER SECRETARY | ) | |
| | ) | |
| Defendants. | | |

NOW COMES the Plaintiff, Frontier Fishing Corp. by and through its counsel to move

this Honorable Court to supplement the administrative record and allow review of one additional

document, part of an Exhibit, Respondent's No. 3, which was omitted when the exhibit was

entered into evidence at the hearing below, but was in the possession of the Agency.  The dispute

in this case is whether a radar contact detected by the USCGC SPENCER inside a Restricted

Gear Area (RGA1) was the Plaintiff's vessel, F/V SETTLER.  During the course of preparation

for this case, Plaintiff's counsel, not the counsel who handled the underlying case, was presented

with a record that shows that the SPENCER had plotted another radar target in RGA1 that

appeared to be a continuation of the plot the Agency claimed was SETTLER.  Rather than move

towards the point where SPENCER intercepted SETTLER outside RGA1, as the Agency claims

occurred, this shows the plotted target moving further into RGA1, see diagram prepared by

Plaintiff's expert, Gerald A. Ouellette attached to his affidavit, a copy of which diagram is

annexed hereto as Exhibit B for convenience of the Court..  This target was still being observed

when the SETTLER was being boarded by the SPENCER boarding team outside of RGA1 and

was accused of being the radar target SPENCER's CIC crew was.  In effect, the plot at 22:19

conclusively shows that the target the SPENCER plotted in RGA1 was not he SETTLER, according to a plain reading of the disputed document, tracking some 1.4 nautical miles distant. Plaintiff seeks to supplement the record with this document which unequivocally disproves the Agency's entire case.  Alternatively, Plaintiff seeks leave to conduct limited discovery into all of the records generated by Combat Information Center (CIC) on board the USCG SPENCER on October 16th and 17th of 1997.  In support of this request, the Plaintiff states as follows:

1.      On the evening of October 16, 1997, the USCGC SPENCER alleges that it tracked a contact inside an area known as Restricted Gear Area One (RGA1), and that it detected a fishing vessel trawling in the same general direction.  After closing on the lighted fishing vessel, the USCG SPENCER determined it to be the F/V SETTLER, and claims that it was the target tracked inside of the closed area.  As part of its case and argument, the Agency argued that there were no other vessels sighted or targets tracked on radar in that vicinity and that the radar targets and the F/V SETTLER were one and the same.

2.      F/V SETTLER has consistently maintained that she was misidentified and has sought exculpatory evidence, including evidence of other sightings, plots or evidence of other vessels or targets that were in the area.  Plaintiff repeatedly sought evidence of other radar plots taken on the night of the incident but was repeatedly told none existed.

3.      The Agency witnesses consistently denied sighting other vessels or other radar plots and maintained that all records have been produced.

4.      On August 10, 2001, four days before hearing, the Agency produced to Plaintiff's counsel in the proceedings below, Pamela Lafreniere, a 17 page facsimile, indicating it was materials just received from the USCG SPENCER, in the form of Combat Information Center (CIC) logs and radar manual.  See Exhibit A to the Affidavit of Harriet A. Didriksen.  Pages 9

Motion To Supplement Record                    2

through 17 of the document bear a second date stamp of January 14, 2001, indicating Agency

Counsel, or someone else in the Agency, had the document prior to August 10, 2001.

5.      The CIC logbooks were introduced at hearing.  A single page of the materials was

apparently misplaced, page 9 and not discovered by Plaintiff or its new attorneys until November

of 2004, annexed hereto as Exhibit 1.  It was not offered by the Agency at hearing nor has it been

reviewed by any expert in conjunction with the handling of this case.  Apparently, it was never

considered by the Agency when it assessed the initial penalty against the F/V SETTLER.

6.      The document was provide to the undersigned counsel, and reviewed in light of the fax

numbers and dates on the top of the pages, and determined to have been provided by NMFS

counsel in August, 2001.  A review of the record indicates that it is a data sheet generated by the

USCG SPENCER CIC on the date in question.

7.       The document in question does not readily identify the author, but does identify a

tracking number of 8174 and in the remarks column states "Settler pts"

8.      An Administrative Hearing was commenced on August 14, 2001 at which time an

Administrative Law Judge found that F/V SETTLER was fishing in a closed area in violation of

various fishing regulations.

9.      At the hearing, the Defendant introduced into evidence an October 20, 1997, Offense

Investigation Report authored by LCDR Diaz that states the track number assigned to F/V

SETTLER is 8147.  See A.R. Vol. V at 117, Agency Exhibit 19.

10.     Also at the hearing, the Defendant introduced into evidence an October 20, 1997, Offense

Investigation Report authored by QMZ Coppola states that the track number assigned to F/V

SETTLER is 8147.  See. A.R. Vol. V at 117, Agency Exhibit 22.

11.    CIC hand written logs were introduced into evidence.  See A.R. Vol. V at 117, Respondent Exhibit 3, received into evidence on August 14, 2001.

12.    Testimony of LCDR Diaz was received to explain that in essence there was a Scribner error regarding the tracking number in his report in that the actual tracking number was assigned to the F/V SETTLER was 8174.  A.R. Vol  III at 115 at 46 and 105.

13.    Other USCG personnel that testified believed that there was only one log of radar information.  See A.R. Vol. IV at 784-785.

14.    LCDR Diaz apparently was unaware of the CIC log when he testified that there were no other radar contacts or he lied under oath.  See A.R. Vol. IV at 861.  LCDR Diaz did indicate that CIC provided the track number and that CIC had a radar console and could track vessels.

15.    Plaintiff wrote to the Defendant seeking to have Exhibit "A" evaluated from the perspective that the sheet in question is exculpatory evidence and that apparently was never addressed by the Agency, Plaintiff's former counsel, or the ALJ.  See Exhibit "B" attached hereto.  Plaintiff's counsel requested during a telephone conversation that the document also be reviewed by USCG personnel.

16.    The Defendant replied but failed to address the real issue, that being whether the United States Coast Guard and NOAA had evidence in their possession that the Agency t failed to consider that would have exonerated the Plaintiff from the alleged fishing violation.  See Exhibit "D" attached hereto.  The document was in the Agency's possession, the Agency was under an affirmative obligation to review it.  Even if it failed to do so through oversight before it issued its final decision, it should do so now.

17.    Attorney Johnson indicates that the time on the report indicates a morning time. The F/V SETTLER left port at 10:00AM and did not encounter the USCG SPENCER until it first set out

its gear after 21:00 hours. The document refers to the F/V SETTLER, provides it the unique track number that was assigned at 9:05 PM, or 21:05, for the vessel, and establishes a range and bearing to the F/V SETTLER different than that provided at any other time by the Agency. If, as it is surmised, the record represents a radar plot of the vessel identified as 8174 and it was taken at 10:19 PM, it would exonerate the F/V SETTLER for the following reasons:

a.     The radar fix would have been 1.4 miles southeast of the USCG SPENCER, when the USCG SPENCER had the F/V SETTLER close alongside.

b.     The course and speed of the radar target at location A4 at 21:58 was 173 true. The fifth plot inside RGA1 in this new document was also on a heading of 173 true. The course from A4 to the fifth plot in RGA1 was 173 °true. The plotted speed from A3 to A4 was approximately 5.4 knots. The plotted speed from A4 to the fifth plot in RGA1 was also approximately 5.4 knots. In short, the fifth plot inside RGA1 is a continuation of the radar targets course from A3 to A4, the same course and speed consistent with a vessel traveling from A4 to the fifth plot and beyond.

c.     Shortly after coming alongside the F/V SETTLER, the USCG SPENCER made a turn to port and steamed directly into the closed area, directly toward the point that this fifth plot inside RGA1 would have indicated at 22:19 or 10:19 PM. The SPENCER steamed towards this point for ten minutes. Although the SPENCER crew denied having seen any other vessels or targets at or around the time of the SETTLER boarding, it clearly investigated something right where the fifth plot inside RGA showed the radar target from A4 had traveled.

See affidavit of Gerald A. Ouellette, with attached chart,

In short, if, as the Plaintiff believes this plot was taken by CIC on the evening of the incident as part of plot 8174, then it explains why the USCG confused the target plotted in RGA1 with the F/V SETTLER, which was legally fishing alongside the closed area.

18.     Federal agencies and the Office of the United States Attorney are obligated to refrain from using improper methods calculated to produce a wrongful result, and it is his or her duty to use every legitimate means to bring about a just result.  See *Berger v. United States,* 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935); *U.S. v. Kelley*, 543 F. Supp. 1303 (1982); *U.S. v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365 (9th Cir. 1980).  This document by the AUSA's own admission was not fully considered by the Agency.  Instead of tackling the exculpatory matter on the merits to explain why the Plaintiff is wrong, the Agency relies upon the ALJ's findings that did not include all of the Agency's own information on the event in question.  In point of fact, the document, generated and supplied by the Agency is an admission, and fairly clearly disproves the Agency's case

19.     Obviously the Court's review of an agency's decision is focused on the administrative record.  See *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743, 84 L.Ed. 2d 643, 105 S.Ct. 1598 (1985); *Camp v. Pitts*, 411 U.S. 138, 142, 36 L.Ed.2d 106, 93 S.Ct. 1241 (1973) *Valley Citizens for a Safe Env't v. Aldridge,* 886 F.2d 458 (1st Cir. 1989).

20.      "Where there was a failure to explain administrative action so as to frustrate effective judicial review, ... the remedy is to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."  *Camp,* 411 U.S. at 143.  "The administrative record may be supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature. ... The new material, however, should be explanatory of the decision makers' action at the time it occurred.

No new rationalizations for the agency's decision should be included ... and if included should be disregarded. If the agency action, once explained by proper agency official, is not sustainable on the record itself, the proper judicial approach has been to vacate the action and to remand ... to the agency for further consideration." See *Sierra Club v. Marsh*, 967 F.2d 763, 772-773 (1st Cir. 1992)[internal citations omitted].

21.    Some questions asked to determine the applicability of the extra material have been framed as follows: "Did the agency *know* ... about some important matter that was ignored? See *Hough v. Marsh*, 557 F.Supp. 74, 84, n12 (D.Mass. 1982) citing *County of Suffolk v. Secretary of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977), *cert. denied,* 434 U.S. 1064, 55 L.Ed.2d 764, 98 S.Ct. 1238 (1978); *Valley Citizens for a Safe Env't v. Aldridge,* 886 F.2d 458, 460 (1st Cir. 1989). Did the agency improperly rely upon some other important, but secret, information not part of the record? Id. Moreover, a reviewing court might want additional testimony to explain the matters in the agency record which may come in the form of additional factual evidence as an aid to understanding. Id. Of course the use of this information is discretionary with the reviewing Court. However, "[t] he Court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters." *Hough v. Marsh*, 557 F.Supp. 74, 84, n12 (D. Mass. 1982) citing *Asarco Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir. 1980)[1].

---

[1] Courts have allowed extra-record evidence to determine whether an agency's final action meets the test of rationality under the following circumstances: (1) when agency action is not adequately explained in the record before the court; when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which if ailed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under NEPA; and (8) in cases where relief is at issue, especially at the preliminary injunction stage. See *ITT Federal Services Corp., v. U.S.*, Fed.Cl.1999, 45 Fed.Cl. 174; *Welch v. U.S. Air Force*, 249 F.Supp.2d 797 (N.D.Tex. 2003).

Motion To Supplement Record                7

22.    The ALJ did not address the CIC radar log in question and neither did the Agency.
Further, there appears to be evidence that would suggest that there may be additional radar logs
from CIC based upon the fact that the USCG SPENCER was tracking the F/V SETTLER for
approximately forty minutes before the time identified on Exhibit "A".  No other records of radar
plots made by CIC have been produced and the existence of this radar log was denied by the
Agency witnesses at hearing.

23.    To be clear, the Plaintiff is seeking the admission of this document as a supplementation
to the record and its consideration of Plaintiff's motion for summary judgment on the merits
and/or to be allowed to conducted limited discovery into why it does not show what it appears to
show, and as to the existence of other similar documents that were not produced to the Plaintiff
by the Agency.  Additionally, the Plaintiff seeks to take discovery of the Agency for the purpose
of (1) to determine whether they considered the information contained on the CIC radar log; (2)
if they did consider it how did it impact their decision process; and (3) if they did not consider
the information, how does it impact their relative opinions.

24.    The Plaintiff believes that the information sought further supports its contention that the
ALJ's decision is not sustainable on the record itself is contrary to the evidence and that the
Court should vacate the action completely or remand it to the agency for further consideration of
the CIC information in the context of the entire case.

        WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant the
following relief:

        1.    Allow Plaintiff to supplement the record by admitting the one page CIC radar log
        as extra-record evidence;

        2.    Allow the Plaintiff to conduct limited discovery to determine:

        a.    whether there are additional CIC radar logs that were not produced;

Motion To Supplement Record            8

b.      the extent of the Agency's witnesses' knowledge and understanding of the
information contained on the CIC radar logs and any other additional information
that may be produced.

3.      Alternatively, order the matter remanded with an order for the Agency to review
the document and any other CIC materials and reconsider its decision in light of
said document

Respectfully submitted this 7th day of April, 2005,

**FRONTIER FISHING CORP**
By its attorneys

Dated: April 7, 2005          */s/ Stephen M. Ouellette*
Stephen M. Ouellette, Esquire
BBO No.: 543752
David S. Smith, Esquire
BBO No.: 634865
CIANCIULLI & OUELLETTE
163 Cabot Street
Beverly, MA 01915
Tel:  (978) 922-9933
Fax:  (978) 922-6142

| TIME | TRACK | BG | RANGE | CS | SP | BG | RANGE | TM | REMARKS |
|------|-------|-----|-------|-----|------|-----|-------|-----|---------|
| 1019 | 8174 | 131 | 1.4 | 173 | 3.4 | | | | Sander #3 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

PAGE _____ OF _____

Exhibit A



Data between the radar target points within Gear Area 1
2140 to 2147: 0.309 nm, 7 min, 2.65 knots
2147 to 2152: 0.285 nm, 5 min, 3.42 knots
2152 to 2158: 0.506 nm, 6 min, 5.06 knots
2158 to 2219: 1.917 nm, 21 min, 5.48 knots

**Exhibit B**
**(Attachment A to Affidavit of Gerald A. Ouellette)**

# CIANCIULLI & OUELLETTE

ATTORNEYS AT LAW AND PROCTORS IN ADMIRALTY
A Professional Association

163 CABOT STREET
BEVERLY, MASSACHUSETTS 01915

_____

Stephen M. Ouellette*
Lori A. Cianciulli
----------
David S. Smith

*Also Admitted in Maine

Telephone:    (978) 922-9933
Facsimile:    (978) 922-6142

Sender's E-mail: fishlaw@aol.com
http://www.candolawyers.com

December 11, 2004

Anita Johnson, Esquire
Office of the United States Attorney
For the District of Massachusetts
One Courthouse Way
Boston, Massachusetts

**BY EMAIL**

Re:    Frontier Fishing Corp. v. Evans

Dear Attorney Johnson:

As we briefly discussed, a new document has been discovered in Attorney Lafreniere's file that raises serious questions about the government's case as presented at the underlying hearing.  (I note I was not involved in the underlying case).  Based on the following I ask that you immediately undertake to determine the source of this document, which I believe to be radar plot taken from the USCG SPENCER on the evening of October 16, 1997, most likely from the Combat Information Center.  It appears to contradict the testimony of USCG officers who testified at hearing that the F/V SETTLER traveled from a plotted positions of a vessel within the Restricted Gear Area one (RGA1) and confirms that a second vessel was in fact being plotted within the closed area and was moving on a southbound path from the positions plotted within the RGA at the time the F/V SETTLER was being boarded.  This evidence would exonerate the F/V SETTLER and raise serious questions about the government's production of evidence in this case, and the veracity of government witnesses

As you are aware the government contended that on the evening of October 16, 1997, the USCG SPENCER observed a radar contact in RGA 1.  Four separate plots were obtained at 21:40 to 21:58, by fixing the SPENCER's position using its Differential Global Positioning System (DGPS) and then using radar plots to determine range and bearing to the radar contact, thereby plotting the absolute position of the contact.  These plots are shown on attachment one hereto and marked by time.  The position of the SPENCER was at all times known by the DGPS position, and this position, as set forth in the header log, provides the starting point for all calculations upon which the government relied.[1]

---

[1] The ALJ appears to reject this, at one time concluding that the SPENCER's position can not be established at any given time, where the SETTLER's plotted position in relation to the SPENCER's DGPS position would have, at one time, have made it impossible for the SETTLER to have moved from the radar plots in the closed area.  Rather than

Anita Johnson.doc

**CIANCIULLI & OUELLETTE**

Anita Johnson, Esquire
December 11, 2004
-2-


The F/V SETTLER contends it set out in a position outside of the closed area and essentially traveled southward along the closed area line.  Notably, the USCG deck officer had improperly plotted the closed area by leaving off at least two turning points for the demarcation line of this complicated area.  Despite the USCG's insistence that it was within the area for some time when it was near the SETTLER, the SPENCER was in RGA1 for only a short period of time and the only evidence of an incursion was the claimed relationship of the radar plots to the SETTLER.

The SETTLER maintains that it could not have been the vessel plotted in the closed area that evening for a number of reasons set forth in the administrative record that I will not belabor here, but in effect the times and vessel speeds are irreconcilable without rejecting objective evidence like the SPENCER's DGPS position, meeting aspects of the vessel as observed by the crew of the SPENCER, and distances that would have had to have been traveled in the time sequence.

Nonetheless, the nagging issue has been what the SPENCER was tracking.  The SPENCER crew has continued to deny seeing or plotting another vessel in or near this area, and concluded the vessel plotted on radar had to be the SETTLER.

My client has recently discovered a fax transmission sent from the NOAA Office of the General Counsel in Washington. The fax bears a transmission date of August 10, 2001, and the OGC's fax number.  The fax also indicates it was received by someone, presumably the OGC on January 14, 2001.  IT was sandwiched between a radar instruction manual and a portion of what appears to be a deck log.  Because of the late transmission to Attorney Lafreniere and lack of identification, it was not reviewed by SETTLER's experts until now.

This single page document appears to be a portion of a document, and appears to me to be a rough radar plot log.  It is dated October 16, 1997 at 10:19 and bears the same unique track number assigned to the F/V SETTLER tracks, indicating it is the same contact as the earlier plots.  If the time reference is to 10:19 pm (the SETTLER left port at around 10:30 am on the October 16, 1997 and could not have been plotted in the morning) this 5th Plot within the closed are of this contact established that the radar contact within RGA1 plotted by the SPENCER was not the SETTLER.  This 5th Plot, shown on attachment 1, if plotted from the SPENCER's position at 10:19 PM is a direct continuation of a course from the 21:52 and 21:58 plots.  The course and speed shown on the contact log are most likely from the COMDAC, are consistent with a vessel continuing a course at constant speed from the 21:52 plot through the 21:58 to the

question the radar plots, the ALJ rejected the SPENCER's DGPS positioning system, since it was inconsistent with the claim SETTLER was in the closed area-a claim based on the accuracy of the SPENCER's DGPS.

**CIANCIULLI & OUELLETTE**

Anita Johnson, Esquire
December 11, 2004
-3-


Fifth Plot.  In effect, this 5th plot is in the precise position at the precise time a vessel traveling on a constant course from the 21:58 to 21:58 position would have been in if it maintained course and speed, and is 1.4 nautical miles from the SETTLER.  The similarity is too great for coincidence.

Another unanswered question has been why, after boarding the SETTLER, the SPENCER made a sudden turn into the closed area at 22;48 and proceeded on an Eastward heading fro almost ten minutes.  The SPENCER headed directly for the position of the 5th plot, indicating it saw and moved to intercept this target.

I note that the OGC claimed not to be able to produce rough radar logs, and provided no information from the SPENCER's CIC.  It is my understanding that on the 270 class cutter, the CIC plots independently from the bridge, and may have different information from the deck officers on the bridge.  If we are correct and this document is a rough radar log of a vessel plotted at 10:19 PM from the SPENCER, either by CIC or on the bridge, this indicates the OGC withheld documents that exonerate the F/V SETTLER.  I ask that you consult with your client as to what this document is and advise me why it does not exonerate the SETTLER and why all rough radar logs from the bridge and the CIC were not produced during the proceedings below.

I note that you have suggested that we consider a remand of this case to the Agency for further consideration.  I am skeptical of the ability of the Agency to objectively review this issue, in light of the issue presented and handling of this case to date, and ask that you contact me to discuss where we go from here.  I will be on trial next week, but can be reached through my office.

Thank you for your attention to and courtesy in this regard.

Very truly yours,

Stephen M. Ouellette, Esq.

Enclosures



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 11, 2005

Stephen M. Ouellette, Esq.
Cianciulli & Ouellette
163 Cabot St.
Beverly, MA 01915

    Re: <u>Frontier Fishing Corp. v. Evans</u>

Dear Mr. Ouellette:

    After diligent investigation by NOAA, the government disputes your allegations regarding the document that you enclosed with your December 11, 2004, letter to this office.

    (1.) Your client <u>never offered the document into evidence</u> at the administrative hearing. It is not part of the record upon review, and, as you are aware, review of agency action is limited to the record compiled in this case. *See* 5 U.S.C. § 706; *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Indeed, your client did not refer to the document at all. There were many opportunities to ask Coast Guard witnesses questions regarding the relevance, if any, of the document, and your client did not use them. We can only conclude that your client did not regard the document as possibly relevant or that your client concluded that the document did not assist his case.

    You suggest that your client did not receive the document on a timely basis and that your client "discovered" the document only recently. If I understand your point correctly, the point is contrary to fact. The document was produced to your client before the commencement of the ALJ hearing on August 14, 2001. Your client had the document for a period of at least 15 months before the conclusion of the ALJ hearing in November 2002!

    As you may recall, your client made a last minute



Exhibit D

February 25, 2005
Page 2

production request to NOAA on August 2, 2001, after the deadline
for administrative discovery. *See* 15 C.F.R. § 904.240(c) (no
discovery requests honored when made within twenty days of
hearing). NOAA volunteered to honor the request nevertheless and
produced this and other documents on August 10, 2001 (four days
before the commencement of the formal hearing).

It is possible that your client did not offer the
document into evidence or even use the document to question
witnesses because of its anomalous nature. The document does not
conform to standard Coast Guard practice. It is untitled. It is
unsigned. It contains no lines over the unused portion of the
paper, contrary to universal Coast Guard practice intended used
to prevent later additions. It refers to a time of 10:19, which
in military practice refers to 10:19 a.m., whereas the law
enforcement action against the F/V Settler occurred in late
evening, a time period universally recorded by military personnel
as 21 hours, 22 hours, 23 hours, etc. As you are aware, all of
the ship tracking documents admitted into evidence in the case
utilize military designations for evening times. The document
does not, on its face, show anything one way or the other.

(2.) The document does not exonerate the F/V Settler from
illegal fishing charges. The evidence before the ALJ was
overwhelming in establishing that the F/V Settler was fishing in
a prohibited area. In the record is the testimony of the five
Coast Guard officers involved in the interception of the F/V
Settler, the contemporaneous records created by these
individuals, the detailed Offense Investigation Reports prepared
by Coast Guard personnel, and the expert witnesses for the Coast
Guard, together detailing the facts and operation of the
incident. All Coast Guard witnesses were cross examined by your
client, and your client had the right to interview Coast Guard
personnel upon request prior to the hearing.

Your client raised as a defense at the hearing that the
Coast Guard had been tracking another, unidentified vessel, and
not the F/V Settler. Your client introduced no credible evidence
to support the claim, despite the lengthy period during the
hearing that was devoted to the claim, and this document was not
used to support the claim. The phantom vessel theory, in short,
was fully explored and rejected by the ALJ.

Accordingly, this document does not persuade this office

February 25, 2005
Page 3

that there was a defect in the administrative proceedings in this
case, much less a significant defect.

Given the strong evidence against your client and the ALJ's
opinion and imposition of penalties, and the true circumstances
regarding production of the document, this office is very
surprised at your suggestion in your letter and our telephone
conversation that your client was penalized due to bad faith on
the part of the Coast Guard rather than due to his own conduct.

Yours truly,

Anita Johnson
Assistant U.S. Attorney
(617) 748-3266