UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRONTIER FISHING CORP. ) | | CIVIL ACTION |
| Plaintiff, ) | | NO.: 04-11171-DPW |
| v. ) | | |
| ) | | |
| DONALD EVANS, Secretary of the ) | | |
| UNITED STATES DEPARTMENT OF ) | | |
| COMMERCE; AND CONRAD C. ) | | |
| LAUTENBACHER, JR., UNDER ) | | |
| SECRETARY FOR OCEANS AND ) | | |
| ATMOSPHERE/ADMINISTRATOR AND ) | | |
| DEPUTY UNDER SECRETARY ) | | |
| ) | | |
| Defendants. | | |

**AFFIDAVIT OF GERALD A OUELLETTE**

I, Gerald d A. Ouellette, of 87 Andrews Way, Plymouth, MA, having been duly sworn, hereby state:

1. I served as one of Frontier Fishing Corp.'s experts in the proceedings before the Agency below, and my curriculum vitae is Exhibit 41 to the Administrative Record. I have had over 45 years experience in advanced mathematical and navigation analysis on various Department of Defense (Naval, Air Force and Army) programs. I have developed and marketed world wide highly technical analytical computer programs for precision surveying, navigation, target tracking, and fire control. My opinions stated herein are given and calculations performed to a high degree of certainty within my profession.

2. Position at sea is specified by values of longitude and latitude which define location on the earth's or sea's surface and is essentially a mathematical calculation. The USCGC SPENCER had taken radar range and true bearing (angle relative to true North) information on a vessel located within the restricted gear area. This information, range and bearing were provided by the COMDAC system on the Spencer. Also, the navigation system of the Spencer provided

the Spencer's longitude and latitude which was printed out in its header log at every minute in time. This header log in providing the precise position of the Spencer to a few meters is the basic truth or verification data. Using well know mathematical computations, the position coordinates of a radar target could therefore be determined whenever a radar contact was generated. The Case Package included a hand written log of the Spencer's coordinates and the range and bearing to a target, assigned contact number 8174 ( a unique identifier) at seven discrete times (Agency exhibit 14).

3. Both the Agency's and the Respondent's expert witnesses used this data to generate the exact position coordinates of the radar target. The first four target coordinates were located inside of RGA1. The last three were of a target located outside of the restricted area at a range of about 350 yards from the Spencer and indeed did provide the trawler Settler's position at these times (22:08, 22:19, 22:14). The radar log (Exhibit 14) was taken from the COMDAC unit on the bridge of the Spencer. Radar data was also being taken in the Combat Information Center (CIC) although prior to preparation of my reports and the hearings, I was provided no logs or entries related radar plots performed by the radar operator in the CIC.

4. In late fall of 2004, I was provided with a copy of a handwritten log which appears be part of the CIC records. That record indicates that a range and bearing was taken to a contact identified as 8174 at 10:19 on October 16, 1997 and speed and course calculated, presumably by COMDAC. Since the only reference to the SETTLER and contact 8174, the unique identifier that was assigned by the CIC at 21:05, it is reasonable to conclude that the contact was taken at 22:19, and that it was believed by the CIC personnel to be a continuation of track 8174.

5. Using mathematical calculation I plotted the position of the a contact at the stated range and bearing from the SPENCER's known position, as stated on its header log at 22:19 on

October 16, 1997. Using mathematical calculation, the position coordinate of this fifth radar plot in the restricted area was determined exactly, and is shown on Attachment A, hereto.

6.  The COMDAC system provides a speed and heading angle for any target tracked, however, since the speed and heading are determined over a very short observation, the target speed may have a large error, but the computed target heading is less sensitive to tracking errors and is usually more accurate. The four radar points in the closed area are labeled A1, A2, A3, and A4. Again using mathematical navigation techniques, the vessel speed between the various radar points can be determined exactly. Between A3 and A4, the vessel average speed was 5.06 knots and between A4 and the 5th plot the average speed was 5.48 knots, entirely consistent with the unknown target in the restricted area. Also, the COMDAC generated heading of 173 degrees true for the target at the A4 position leads directly to the fifth plot target location in RGA1 as shown in the attached figure (attachment A).

7.  Of further note is that the USCG Spencer left the trawler Settler's side <u>and at 22:48</u> turned into the restricted area heading directly towards the fifth plot location as shown in attachment A. After about 10 minutes, the Spencer returned to accompany the Settler after having left its side for approximately 17 minutes.

8.  A target moving from the point of the fifth plot in RGA1 at the heading of 173 and a speed of 5.48 knots would have exited the area before the SPENCER could have intercepted it.

Signed under the pains and penalties of perjury this 7th day of April, 2005

                                                          */s/ Gerald A. Ouellette*
                                                          Gerald A. Ouellette



**Exhibit A to Affidavit of Gerald A. Ouellette**