**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

| NO. | PLAINTIFF'S UNDISPUTED FACT | DEFENDANTS' RESPONSE |
|---|---|---|
| | **Facts Plaintiff contends are not in dispute and that do not involve supplementing the record** | |
| 1 | On the evening of October 16, 1997 while on patrol adjacent to an area known as RGA1, when it detected a radar target inside an area the crew of the SPENCER believed was RGA1. | Disputed. The Plaintiff provided no cite to the record to support this claim. However, the Plaintiff admits that on October 16, 1997, the USCGC Spencer plotted the F/V Settler inside Restricted Gear Area 1 ("RGA 1") four times. Vol. V, Tab 117, Agency Exs. 14 & 16. |
| 2 | On the night of the incident, the crew of the SPENCER relied on a handwritten plot of RGA1 drawn on a navigational map, AR v. III Testimony of Diaz at p. 49, see AR v. V at Agency Exhibit 15. See also Gerald A. Ouellette's analysis of the USCG plot of RGA1, AR v. III and Agency Exhibit 41 at page 4. | Disputed. The Defendants admit that Agency Exhibit 15 included a handwritten plot of RGA 1 drawn on a navigational chart. However, the Defendants dispute the Plaintiff's use of the phrase "relied on" as being overly vague and ambiguous. The Plaintiff's characterization of this fact fails to explain for what purpose the Plaintiff contends the Defendants relied on the handwritten plot. The Defendants also dispute the Plaintiff's reference to Ouellette's analysis of the USCG plot in the third volume of the Administrative Record as overly broad and insufficiently specific as Vol. III of the Administrative Record is comprised of 438 pages. |
| 3 | The SPENCER crew erroneously determined the borders of RGA1 on the night of the incident. Id. | Disputed. The Defendants dispute the relevance of the error in the handwritten plot. The Defendants plotted the F/V Settler inside RGA1 four times – at 2140, 2147, 2152 and 2158. Vol. II, Tab 106, at 5, paragraphs 24 & 26. The Plaintiff has not provided any evidence nor claimed that the plots at 2140, 2147, 2152 and 2158 were <u>not</u> inside RGA 1. The Defendants based their claim that Plaintiff violated the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act) on the fact that the Plaintiff was fishing with mobile gear in RGA1 at 2140, 2147, 2152 and 2158. Vol. II, Tab 92; *see also* Vol. II, Tab 106 at 11. In addition, as was made clear during testimony at the hearing, only one point of the RGA1 boundary had been misplotted, but it had no effect on whether the plots at 2140, 2147, 2152 and 2158 were inside RGA1. Vol. III, Tab 155, TR 56 generally. |

| 4 | The Agency continued to fail to have the proper plot of RGA1's boarders [sic] as late as April 24, 2000 when the USCG legal office claimed that the SETTLER's claimed "set out" position at 40°01.28'N by 070°11.46'W, was inside of the closed area. See AR v. Figure 12 to Ouellette Report, Agency 41 at page 12. | Disputed. The Defendants dispute the relevance of the error in the handwritten plot. The Defendants plotted the F/V Settler inside RGA1 four times – at 2140, 2147, 2152 and 2158. Vol. II, Tab 106, at 5, paragraphs 24 & 26. The Plaintiff has not provided any evidence nor claimed that the plots at 2140, 2147, 2152 and 2158 were not inside RGA 1. The Defendants based their claim that Plaintiff violated the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act) on the fact that the Plaintiff was fishing with mobile gear in RGA1 at 2140, 2147, 2152 and 2158. Vol. II, Tab 92; *see also* Vol. II, Tab 106 at 11. In addition, as was made clear during testimony at the hearing, only one point of the RGA1 boundary had been misplotted, but it had no effect on whether the plots at 2140, 2147, 2152 and 2158 were inside RGA1. *See* Vol. III, Tab 155, TR 56 generally. |
|---|---|---|
| 5 | As noted in the ALJ's decision, the SETTLER's fine was actually increased because the SETTLER's stated start position at 40°01.28'N by 070°11.46'W was outside of the closed area. See ALJ decision, AR v. II, and tab 106 at page 20. | Disputed. The Defendants dispute Plaintiff's characterization of the ALJ's reasoning for increasing the civil penalty assessed against the Plaintiff. In fact, the ALJ stated, in evaluating the degree of culpability of the Respondents that "[g]iven the witness testimony and documentary evidence contained in the record, the waypoint position manually inputted by Respondent Valente in the F/V Settler's fish plotter is quite troubling. Indeed, only two conclusions might be reached from this piece of evidence. Either Respondent Valente was at the waypoint position of 40-01.28 LAT, 070.11.46W LONG when the trawl commenced on October 16, 1997, or Respondent Valente intentionally inputted the position upon seeing the Coast Guard in order to cover or hide the fact that he was fishing in Restricted Gear Area I. Given the overall weight of all of the evidence, I conclude it was later [sic]. Based on Respondent Frontier's prior transgressions, any future violation would have significant adverse consequences for the company. Thus, there was a built-in incentive for Respondent Valente to craft a plausible alternative set of facts to hide his illegal activity. Behavior of this nature cannot be tolerated and serves as grounds for increasing the penalty." Vol. II, Tab 106 at 20. When not subject to the Plaintiff's mischaracterization, it becomes evident that it was the ALJ's finding that |

| | | the Plaintiff deliberately inputted a false position in order to attempt to evade liability that was the ALJ's grounds for increasing the penalty. |
|---|---|---|
| 6 | The target detected at 21:05 was assigned contact number 8174 by the Combat Information Center. AR v. V Agency Exhibit 19. AR v. III Testimony of Diaz, at page 46. | Disputed, only insofar as the cited portions of the administrative record do not support the factual claim. Agency Exhibit 19 actually mistakenly identifies the track number as 8147 instead of 8174. Vol. V, Tab 117, Agency Ex. 19. The Defendants corrected this error both in oral testimony at the hearing and in the Post-Hearing Brief. Vol. III, Tab 115, TR 105, at 6 – 8 and TR 213 at 9 – 13; *see also* Vol. II, Tab 92 at 7, fn 1. In addition, the cited testimony of Commander Diaz states that the contact number "comes off the COMDAC system" and does not state that the contact number was assigned by the Combat Information Center. Vol. III, Tab 15, TR 46 at 10-11. |
| 7 | The USCG SPENCER visually detected a white over green light indicating a vessel engaged in fishing operations to her port at 21:30, testimony of Diaz, AR V. III at p. 39. | Disputed. The testimony of Commander Diaz is that "just after, 2100, about 2105" the USCGC Spencer picked up a radar contact off its port bow. Vol. III, Tab 115, TR 36 at 23-24. Commander Diaz further testifies that "a few minutes after we first detected him on radar ... the lookout reported that he had a white light out on the horizon." *Id.*, TR 38 at 20 – 23. As the USCGC Spencer got closer, Commander Diaz testified that "we were able to make out green over white, green over white lights." *Id.*, TR 39 at 7 – 9. He testified that "[g]reen over white trawling at night indicates that we have a vessel at night displaying the lights that would indicated that it's [sic] actively engaged in trawling, a form of fishing." *Id.*, TR 39 at 14 – 17. |
| 8 | The SPENCER began to track the radar target and at 21:40 hours, testimony of Diaz, AR v. III p. 44 and plotted the target at four points, A1 – A4 at 21:40, 21:47, 21:52 and 21:58, AR v. V, Agency Exhibit 14. | Disputed. Agency Exhibit 14 shows that the USCGC Spencer actually plotted the F/V Settler seven times. Vol. V, Tab 117, Agency Ex. 14. However, only the plots at 2140, 2147, 2152 and 2158 were in RGA 1. Agency Exhibit 16 designates the plots at those times as A1 – A4. Vol. V, Tab 117, Agency Ex. 16. |
| 9 | At 21:47 the SPENCER plotted a radar target at a range of 7600 yards and a bearing of 36° true. Referred to as A2, AR v. V, Agency Exhibit 14. | Disputed inasmuch as Agency Exhibit 14 does not refer to the radar plot at 2147 as A2. Vol. V, Tab 117, Agency Ex. 14. |
| 10 | The SPENCER's position was being | Admitted. |

| | | |
|---|---|---|
| | automatically Logged [sic] by a Differential Global Positioning system that recorded its position virtually every minute in a document referred to as the Header Log.  AR. v. V, Respondent's Exhibit 1, testimony of Diaz, AR V. III, p. 121. | |
| 11 | The SPENCER's course was plotted from the Header Log by the Agency's expert Peterson and Plaintiff's expert, Gerald A. Ouellette. Those plots are set forth in AR v. V, Exhibit 46, Attachment 1 and also at AR. v. V, Agency Exhibit 41, - Peterson's drawing is on page 12, Figure 7, Mr. Ouellette's drawing is Figure 3 on Page 9.  These accurately set forth the course of the SPENCER during the evening in question during the times stated and are not disputed by either side. | Disputed as to the characterization in the last sentence. |
| 12 | The Agency produced Exhibit 16, AR v. V, which does not represent the course of the SPENCER at all times, but represents a line drawn between the DGPS points on Agency Exhibit 14, AR v. V, at which the SPENCER was located when it took radar plots of the target believed to be in RGA1, Diaz testimony, AR v. III at page 57.  Contrast Agency Exhibit 16 to the drawings of Peterson and Ouellette, Figures 3 and 7 to the Ouellette Report, AR v. V, Agency Exhibit 41, and Peterson drawing at AR v. V, Agency Exhibit 46, Attachment 1. | The Defendants admit that Agency Exhibit 16 portrays the actual location for the USCGC Spencer only at the points labeled B1 – B5. Vol. V, Tab 117, Agency Ex. 16.  Agency Exhibit 14 provides the locations for points B1 – B5.  *Id.*, Agency Ex. 14.  The line between points B1 – B5 merely connects those points and does not represent the actual course of travel of the USCGC Spencer between the times of 2140, 2147, 2152, 2158 and 2208.  *Id.*, Agency Ex. 16. |
| 13 | The SPENCER made a turn to port at 21:47 as evidence [sic] by the change in course derived from the Header Log and depicted on Ouellette | Disputed.  Figure 7 of Agency Exhibit 41 does not show the location of the USCGC Spencer at 2147 and therefore does not support the Plaintiff's claim that the USCGC Spencer made a turn to port at 2147. |

| | | |
|---|---|---|
| | Report, AR v. V, Figures 3 (Ouellette) and 7 (Peterson) of Agency Exhibit 41. | Vol. V, Tab 117, Agency Ex. 41. |
| 14 | From 21:47 to the turn executed between 22:01 and 22:02, the SPENCER maintained a constant course of 28 degrees true based on a plot of her Header Log, see drawings of Ouellette and Peterson, figures 3 and 7, AR v. V, Exhibit 41. | Disputed.  Figure 7 of Agency Exhibit 41 does not show the location of the USCGC Spencer until 2157 and therefore does not support the Plaintiff's claim that the USCGC Spencer maintained a constant course from 2147 until 2201.  Vol. V, Tab 117, Agency Ex. 41. |
| 15 | From 21:47 to 22:01 the SPENCER was heading towards the lights of the fishing trawler, allowing the trawler to evidence a slight drift to starboard to allow SPENCER to come around behind her.  AR v. III Diaz testimony, page 66, lines 8-25 and page 67, Lines 1-3.  See also AR v. V Diaz report, Agency Exhibit 19. | Disputed.  Commander Diaz's testimony and report do not specify why the F/V Settler evidenced a slight drift to starboard or what, if anything, motivated the USCGC Spencer.  Vol. III, Tab 115, TR 66 at 10 – 24.  Plaintiff is providing a characterization of the facts rather than the facts. |
| 16 | The lighted fishing vessel showed her starboard, green light, to SPENCER, indicating passage from right to left across SPENCER's track.  Id. | Disputed.  The cited portions of the administrative record do not support this claim. |
| 17 | At 21:52 the SPENCER plotted a radar target identified as A3 in the Peterson and Ouellette drawings at a range of 6000 yards bearing 33° true, AR v. V Agency Exhibit 14. | Disputed inasmuch as Agency Exhibit 14 does not identify a radar plot as A3 and the Plaintiff's reference to the "Peterson and Ouellette drawings" is insufficiently specific to be verifiable.  Vol. V, Tab 117, Agency Ex. 14. |
| 18 | The target at A3 would have been 5° to the right of the SPENCER's track, based on simple mathematical calculation, Ouellette Report, AR v. V, Exhibit 41. | Disputed.  The ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory."  Vol. II, Tab 106 at 36. |
| 19 | A target moving from A1 to A2 and then from A2 to A3 would have had to have altered course, thereby showing its bow to SPENCER (red and green lights) and then traveled with her port (red light) visible to SPENCER for almost five minutes.  See Peterson and Ouellette | Disputed.  The ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory" therefore the Plaintiff's reliance on Mr. Ouellette's discussion does not provide adequate support for this claim. |

| | | |
|---|---|---|
| | drawings, figures 3 and 7 to AR. V. V, Agency Exhibit 41, and discussion therein. | |
| 20 | There is no indication in the record that the crew of the SPENCER observed a change in lights showing on the SETTLER to indicate that her bow or port side was visible to the SPENCER, or any other visual indication that the lighted SETTLER had changed course. | Disputed.  The Plaintiff provided no cite to the record to support this claim. |
| 21 | A vessel following the Plaintiff's claimed path of the SETTLER from 21:30 to 22:08, as depicted in the Ouellette drawing, AR. v. V, Agency Exhibit 41 and the Peterson drawing, AR, v. V, Agency Exhibit 46, is consistent with the visual observations from the SPENCER. | Disputed.  The ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory."  Vol. II, Tab 106 at 36.  In addition, the ALJ found that "the overwhelming weight of the evidence does not show that the F/V Settler performed a straight trawl [as depicted in Ouellette's drawing].  If the F/V Settler was on a straight trawl, around 2158, the F/V Settler would have been approximately half a nautical mile directly off the bow of the USCGC Spencer and the vessel would have clearly been visible to all members of the bridge watch.  The lights on the fishing vessel alone, especially at night, would have drawn everyone's attention aboard the USCGC Spencer because they are very bright.  A near collision would have resulted when the USCGC Spencer performed the starboard-to-starboard pass.  There is absolutely no evidence that a near collision occurred.  However, the evidence does show that, at 2140 on October 16, 1997, the F/V Settler ... was seven-tenths of a mile inside Restricted Gear Area I traveling on a course of 206 degrees true.  The evidence also shows at 2147, 2152, and 2158, the F/V Settler was again plotted inside Restricted Gear Area I traveling at various courses and speeds estimated between two to six knots in a pattern consistent with a vessel engaged in fishing." *Id.* at 34 (citations omitted). |
| 22 | There is no record that the sighted vessel changed in bearing from the SPENCER from 21:47 until 22:00 when the SPENCER passes the SETTLER starboard to starboard.  AR v. IV at page 908, Line 8 to 21. | Disputed.  The cited portions of the administrative record do not support the claim in this paragraph. |

| | | |
|---|---|---|
| 23 | At 21:58 the SPENCER plotted a target, A4 inside of RGA1 at a bearing of 61° true and a range of 2600 yards, AR v. V, Agency Exhibit 14. | Disputed inasmuch as Agency Exhibit 14 does not identify a radar plot as A4 nor makes any reference to RGA 1. Vol. V, Tab 117, Agency Ex. 14. |
| 24 | Target A4 was 33° relative off of the SPENCER's track as plotted from the Header Log, Ouellette report, AR v. V, Agency Exhibit 41 and Peterson Drawing, AR. v. V, Agency Exhibit 46. | Disputed. The ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. Agency Exhibit 46 does not support the factual claim in this paragraph. Vol. V, Tab 117, Agency Ex. 46. |
| 25 | The SPENCER continued on her course of approximately 28° true to intercept the lights of the SETTLER, although the radar target was now 66° true (33° relative) off of her bow, AR. v. V, Agency Exhibit 14 and Peterson Drawing, AR. v. V, Agency Exhibit 46. | Disputed. This claim is overly vague as to time and therefore cannot be accurately evaluated for veracity by the Defendants. In addition, Agency Exhibit 14 does not include the course of the USCGC Spencer, but only provides its DGPS position and LORAN lines at the times of the seven plots of the F/V Settler. Vol. V, Tab 117, Agency Ex. 14. |
| 26 | The SPENCER did not alter their [sic] course to intercept after the 21:47, 21:52 or 21:58 radar plots. Header Log, AR v. V, Respondent's Exhibit 1, Peterson and Ouellette drawings, AR v. V, Agency Exhibits 41 and 46. | Disputed. The Plaintiff is mischaracterizing the facts. The cited portions of the administrative record only support the Plaintiff's claim that the USCGC Spencer did not noticeably alter its course between 2147 and 2158, but do not provide information on how that relates to the USCGC Spencer's track and interception of the F/V Settler as it fished in RGA 1. Vol. V, Tab 117, Agency Exs. 1, 41 and 46. |
| 27 | The SPENCER did not change course from 21:47 to 22:01, Testimony of Diaz, AR v. IV, p. 908, lines 3-7. | Disputed inasmuch as Commander Diaz's testimony is actually that the USCGC Spencer was on "generally[] the same course of speed" between 2147 and 2201. Vol. IV, Tab 166, TR 908 at 6 – 7. |
| 28 | At all times the SPENCER crew was looking at the starboard side of the SETTLER, testimony Diaz, AR v. IV, page 908 line 8 to 21. | Disputed. Commander Diaz did not testify that the USCGC Spencer was looking at the starboard side of the F/V Settler, but rather that the "course of the contact was generally south, southwest." Vol. IV, Tab 116, TR 908 at 14 – 15. In addition, this alleged fact is insufficiently specific as to time. |
| 29 | Prior to initiating a turn between 22:01 and 22:02, the SPENCER passed the SETTLER, starboard to starboard, AR v. III Diaz testimony | Disputed. Commander Diaz's testimony is not specific as to the time when the USCGC Spencer and the F/V Settler were starboard to starboard, but rather makes clear that it could have been anytime from |

7

| | | |
|---|---|---|
| | at pages 119 line. 5-13. p. 70 line 3-6. | 2200 to 2205 and makes no reference to this information in relation to any turn made by the USCGC Spencer.  Vol. III, Tab 115, TR 119 at 1 – 19.  In addition, in the earlier cited testimony, Commander Diaz only testified that the F/V Settler was on the starboard side of the USCGC Spencer at around 2200, but makes no mention of being starboard to starboard.  *Id.*, TR 70 at 2 – 6. |
| 30 | At 21:58 the SPENCER determined the range to the A4 target as 2600 yards, AR v. V, Agency Exhibit 14. | Disputed inasmuch as Agency Exhibit 14 does not identify a radar plot as A4.  Vol. V, Tab 117, Agency Ex. 14. |
| 31 | A pure mathematical calculation indicates that for the two vessels to have covered 2600 yards, assuming they are on true reciprocal courses from the 21:58 (A4) radar plot to the initiation of the turn after the passing, they must have been closing at a speed of 35.51 knots. Speed=distance/time(2600 yards/2 minutes). | Disputed.  The Plaintiff provided no cite to the record to support this claim.  In addition, to the extent that this claim is based on Mr. Ouellette's report and/or testimony, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory."  Vol. II, Tab 106 at 36. |
| 32 | The Agency concludes that the SETTLER proceeded directly from A4 to A5, the next fix taken by the SPENCER.  See AR v. V Agency track of SETTLER in Ouellette and Peterson drawings, figures 3 and 7 to Ouellette report and Peterson Drawing Agency Exhibit 41 and 46. | Disputed.  The Plaintiff is providing a characterization of the facts.  The F/V Settler was plotted at 2158 (A4) and 2208 (A5).  Vol. V, Tab 117, Agency Exs. 14 & 16.  Other than at the times when it was plotted, no one can accurately state the F/V Settler's exact position, therefore the evidence shows that the F/V Settler proceeded from the plot at 2158 to the plot at 2208, but not the course it traveled between those plots.  *Id.* |
| 33 | The SPENCER's speed, as established by the Header Log, at the time of the passing was 15.4 knots, Ouellette Report, AR v. V, Agency Exhibit 41. | Disputed.  This claim is overly vague as to time and therefore cannot be accurately evaluated for veracity by the Defendants.  However, the Header Log does not include the speed of the USCGC Spencer.  Vol. V, Tab 117, Respondents Ex. 1.  In addition, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory."  Vol. II, Tab 106 at 36. |
| 34 | The SETTLER was shown to be only theoretically capable of moving slightly more | Disputed.  The Plaintiff is providing a characterization of the facts and is also mischaracterizing the burden on Mr. Setterstrom's testimony.  Mr. |

| | | |
|---|---|---|
| | than 5.7 knots while trawling and only then if she let her trawl wires run free. AR v. IV at page 829, Sederstrom [sic] testimony. | Setterstrom's testimony was in rebuttal to the testimony of Plaintiff's expert Mr. Goudey. As the ALJ stated, "As the proponent, the Agency established a prima facie case of the course and speed of the F/V Settler in Restricted Gear Area I on the evening of October 16, 1997 between the hours of 2140 and 2208. This prima facie case is supported by witness testimony and documentary evidence. Upon establishing a prima facie case concerning the course and speed of the F/V Settler, the burden of production shifted to Respondents to rebut the evidence provided by the Agency. The Respondents failed to show that the F/V Settler was incapable of performing the reported maneuvers and speed. The expert opinion of Professor Clifford A. Goudey concerning the performance capability and capacity of the F/V Settler is not credible." Vol. II, Tab 106 at 43. |
| 35 | The SPENCER could not have passed the SETTLER starboard to starboard if it were moving from A4 to A5 at 22:00 or 22:01 without exceeding 20 knots (Closing speed less SPENCER's speed, 35.51-15.4=20.11) | Disputed. The Plaintiff provided no cite to the record to support this claim. In addition, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 36 | Since the vessels were not on reciprocal courses, the distance was greater and an even higher closing speed required for the vessel to pass. | Disputed. The Plaintiff provided no cite to the record to support this claim. In addition, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 37 | The SPENCER initiated its turn between 22:01 and 22:02 and at 22:05 was traveling in a southward direction roughly on a southern heading, 350 yards off of the SETTLER's port quarter, Header Log, AR v. V, Exhibits 41 and 46. | Disputed. The USCGC Spencer plotted the F/V Settler in RGA 1 four times, at 2140, 2147, 2152 and 2157. Vol. V, Tab 117, Agency Exs. 14 and 16. Other than at the times when it was plotted, no one can accurately state the F/V Settler's position, therefore the Plaintiff cannot know that the USCGC Spencer and F/V Settler were 350 yards apart at 2205. However, at 2140, 2147, 2152 and 2157, the radar plots definitively show that the F/V Settler was in the closed area. *Id.* |
| 38 | Commander Diaz stated that at 22:02 on completing the turn around SETTLER, SPENCER was off of the port quarter of | Disputed. In fact, Commander Diaz states that it was at approximately 2200 that the USCGC Spencer ended up on the port quarter of the F/V Settler. *See* Vol. IV, Tab 116, TR 592 at 17 – 19. In addition, |

| | | |
|---|---|---|
| | SETTLER, AR v. IV page 592, lines 17-20. | Commander Diaz's testimony on this point was in response to the ALJ's question regarding when Commander Diaz saw fishing gear in the water. *See id.*, TR 592 at 15 – 16.  The Plaintiff has admitted that it was fishing at all times relevant to this violation.  *See id.*, TR 559 at 8 – 18; *see also* Vol. II, Tab 89. |
| 39 | For the SPENCER to have turned around the SETTLER, in a turn commenced between 22:01 and 22:02 and to have traveled on her port quarter prior to 22:05 for a few minutes, the SETTLER must have been inside, or to the west of the SPENCER's track through its turn, as determined by the Header Log, prior to the SPENCER actually making the turn. (You can't turn around something that is not there) | Disputed.  The Plaintiff provided no cite to the record to support this claim.  In addition, the Plaintiff has provided no support for its claim that the USCGC Spencer turned around anything.  Vessels turn regularly without something to turn around. |
| 40 | The turn executed around SETTLER occurred as anticipated by the SPENCER based on visual navigation to the intercept. | Disputed.  The Plaintiff provided no cite to the record to support this claim.  In addition, the Plaintiff has provided no support for its characterization that of what the USCGC Spencer "anticipated" or that the USCGC Spencer turned around the F/V Settler. |
| 41 | The Agency's expert, Peterson, in his drawing establishes that if, as the Agency alleges, the SETTLER moved from A4 to A5 between 21:58 and 22:08, the SETTLER would have been off of the SPENCER's port bow,  Figure 7 to the Ouellette Report. Agency Exhibit 41, and Agency Exhibit 46. | Disputed.  This claim is overly vague as to time and therefore cannot be accurately evaluated for veracity by the Defendants.  In addition, the USCGC Spencer plotted the F/V Settler four times in RGA 1, at 2140, 2147, 2152 and 2157.  Vol. V, Tab 117, Agency Ex. 14.  Other than at the times when it was plotted, no one can accurately state the F/V Settler's exact position.  Figure 7 of Agency Exhibit 41 makes an assumption of a constant course and speed between the plots at 2158 and 2208 for demonstrative purposes only and does not represent the F/V Settler's actual location except at the plotted points.  Vol. V, Tab 117, Agency Ex. 41. |
| 42 | The Agency witnesses all stated, and the ALJ concluded, that the SETTLER was to starboard of the SPENCER after it made its turn executed between 22:01 and 22:02.  AR v. II, Tab 106 | Disputed insofar as the Plaintiff provided no cites to the record to support its claim that "[t]he Agency witnesses all stated" anything.  The only cite provided is to the ALJ's decision, which makes no reference on the cited page to the testimony of all the Agency witnesses. |

| | | |
|---|---|---|
| | page 42. | |
| 43 | The position of the SPENCER after her turn is established by the Header Log. | Disputed.  The Plaintiff provided no cite to the record to support this claim.  In addition, this claim is overly vague as to time and therefore cannot be accurately evaluated for veracity by the Defendants. |
| 44 | The SPENCER was positioned, based on her Header Log to be no more than 60 yards within the closed area.  AR v. V Respondent's Exhibit and Agency Exhibits 41 and 46. | Disputed.  This claim is overly vague as to time and therefore cannot be accurately evaluated for veracity by the Defendants. |
| 45 | The Agency contends that based upon the Header Log data, the SPENCER carried out a turn to starboard of about 149 degrees bringing it to a heading about 177 degrees true, or nearly due south during the one minute integral [sic] between 2201 and 2202.  AR v. II, Tab 106, page 48. | Disputed inasmuch as the Plaintiff characterizes the claim as a contention of the Defendants rather than a factual finding by the ALJ in his Initial Decision.  Vol. II, Tab 106 at 48. |
| 46 | The Agency contends that the location of the USCGC SPENCER in the RGA1 is unknown despite accepting the Header Log data.  AR v. II, Tab 106, page 48. | Disputed insofar as the cited portion of the record is a factual finding in the ALJ's Initial Decision and does not provide any evidence of the Agency's contentions on this point.  In addition, Plaintiff's claim in this paragraph is overly vague as to time, and therefore is impossible to fully evaluate. |
| 47 | The Agency contends that, despite the Header Log, it does not know the position of the SPENCER in the closed area after the encounter, ALJ decisions, response to Respondent's Request for Ruling H4, AR v. II, Tab 106, page 48. | Disputed insofar as the cited portion of the record is a factual finding in the ALJ's Initial Decision and does not provide any evidence of the Agency's contentions on this point.  In addition, Plaintiff's claim in this paragraph is overly vague as to time and references an uncited "encounter", and therefore is impossible to fully evaluate. |
| 48 | The Agency ALJ disagrees with the Header Log when it does not place the SETTLER far enough into RGA1, arguing that the Header Log position is not as far inside as SETTLER must have been. AR v. II, Tab 106, page 49. | Disputed.  The Header Log documents the location of the USCGC Spencer and provides no information on the location of the F/V Settler, or the relative positions of the two vessels. |
| 49 | The agency contends that despite the Header | Disputed inasmuch as the Plaintiff characterizes the claim as a |

| | | |
|---|---|---|
| | Log, it does not know the location of the SPENCER vis a vis the RGA1, and hence can not agree that the SETTLER was outside.  AR v. II, Tab 106, page 47. | contention of the Defendants rather than a factual finding by the ALJ in his Initial Decision.  Vol. II, Tab 106 at 47.  In addition, the ALJ in fact states that "[t]he relative position of the USCGC SPENCER vis-à-vis the F/V Settler is unknown," not its position vis-à-vis RGA 1.  *Id.* (emphasis added). |
| 50 | The Agency contends that despite the testimony of USCG eyewitnesses, and the position and timing of the SPENCER's turn based on the Header Log, it can not fix the SETTLER's position with regard to the closed area at any time from 21:58 to 22:08.  AR v. II, Tab 106, page 48. | Disputed inasmuch as the Plaintiff characterizes the claim as a contention of the Defendants rather than a factual finding by the ALJ in his Initial Decision.  Vol. II, Tab 106 at 47.  The Plaintiff did not cite to any testimony of "USCG eyewitnesses" to support its claim, because there is no testimony that fixes definitively the F/V Settler's position with relation to RGA 1 between 21:58 and 22:08.  The USCGC Spencer plotted the F/V Settler at 2140, 2147, 2152 and 2157.  Vol. V, Tab 117, Agency Ex. 14.  Other than at the times when it was plotted, no one can accurately state the F/V Settler's exact position.  However, at 2140, 2147, 2152 and 2157, the radar plots definitively show that the F/V Settler was in the closed area.  *Id.* |
| 51 | After the turn, the SPENCER was paralleling the RGA 1 closed area border, Header Log, AR v. V, Respondent's Exhibit 1, as depicted in Ouellette and Peterson Diagrams, AR v. V, Agency Exhibits 41 and 46. | Disputed inasmuch as Plaintiff's claim in this paragraph is overly vague as to time, and therefore is impossible to fully evaluate. |
| 52 | The SETTLER's track after she was rounded by the SPENCER was consistent with her claim that she had set out to the west of RGA1 proceeded southward outside the border of RGA1, Header Log, AR v. V, Respondent's Exhibit 1, and Ouellette and Peterson diagrams, AR v. V, Agency Exhibits 41 and 46. | Disputed.  The Plaintiff is providing a characterization and misstatement of the facts.  First, there is no cited evidence that the F/V Settler "was rounded" by the USCGC Spencer.  Second, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36.  In fact, the ALJ rejected Plaintiff's claim that the F/V Settler trawled outside of RGA 1, stating "[t]he Respondents' argument that the F/V Settler traveled a straight trawl path between 2130 and 2208 on October 16, 1997 is rejected." *Id* at 15. |
| 53 | For a vessel to have moved from the 21:58 radar plot A4 to a position inside of the turn of the | Disputed.  The Plaintiff cites to Agency Exhibit 14 for support for this claim, yet Agency Exhibit 14 does not support this contention.  Vol. V, |

|  | SPENCER at 22:01 to 22:02 it would have had to have covered the reported .83 nm in two minutes, requiring a speed in excess of 25 knots (.83 nm/2 minutes), far in excess of any possible speed of the SETTLER, Radar Log, AR v. V, Agency Exhibit 14. See Paragraph 34 above. | Tab 117, Agency Ex. 14. Agency Exhibit 14 documents seven radar plots taken of the F/V Settler on the evening of October 16, 1997, and includes no information regarding a turn of the USCGC Spencer, a plot labeled A4, the speed of either the USCGC Spencer or the F/V Settler, the possible speeds of the F/V Settler or the locations of the USCGC Spencer and the F/V Settler at any time other than the times of the seven plots. *Id*. In addition, as discussed in paragraph 34 above - the ALJ stated, "As the proponent, the Agency established a prima facie case of the course and speed of the F/V Settler in Restricted Gear Area I on the evening of October 16, 1997 between the hours of 2140 and 2208. This prima facie case is supported by witness testimony and documentary evidence. Upon establishing a prima facie case concerning the course and speed of the F/V Settler, the burden of production shifted to Respondents to rebut the evidence provided by the Agency. The Respondents failed to show that the F/V Settler was incapable of performing the reported maneuvers and speed. The expert opinion of Professor Clifford A. Goudey concerning the performance capability and capacity of the F/V Settler is not credible." Vol. II, Tab 106 at 43. |
|---|---|---|
| 54 | The Agency offered Exhibit 16, AR v. V, to show the course of the SPENCER and the closing aspects of the two vessels. | Disputed. The Plaintiff provided no cite to the record to support this claim. In addition, this claim is a characterization of information rather than a factual statement. |
| 55 | The SPENCER had completed its turn at 22:02 and was on the SETTLER's port quarter, Header Log, AR v. V, Respondent's Exhibit 1, as depicted in Ouellette and Peterson Diagrams, AR v. V, Agency Exhibits 41 and 46. AR v. IV at 592 Lines 17–20. | Disputed. The Header Log only gives the location of the USCGC Spencer and cannot provide any information regarding its relative position to the F/V Settler. Vol. V, Tab 117, Respondents Ex. 1. In addition, the cited testimony of the Commander Diaz states that at "[a]pproximately, 22:00 ... we end up coming behind him and ending up on his port quarter and then paralleling him for several minutes." Vol. IV, Tab 116, TR 592 at 17 – 20. |
| 56 | At 21:58, the SPENCER detected contact 8174 at a distance of 2600 yards and a bearing of 61° true, Agency Exhibit 14. | Disputed. This claim is repetitive and is duplicative of paragraphs 23 and 30. |
| 57 | At 21:58 the bearing to the radar contact recorded at plot A4 was approximately 8 | Disputed. Agency Exhibit 14 makes no reference to a plot designated as A4 nor plots the vessels' relative positions. In addition, to the extent that |

| | | |
|---|---|---|
| | degrees to the right of the SPENCER's course, AR v. V, Radar Plots, Exhibit 14, Header Log, Respondent's Exhibit 1, as depicted in Ouellette and Peterson Diagrams, AR v. V, Agency Exhibits 41 and 46. | this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 58 | At 21:52, the radar target supposedly moved from location A2 to A3, which would have required a change in course so that the targeted vessel had swung her bow towards the SPENCER through to the point that her port or red light would have been visible, and the SPENCER would no longer have been on an intercept course, Header Log, AR v. V, Respondent's Exhibit 1, as depicted in Ouellette and Peterson Diagrams, AR v. V, Agency Exhibits 41 and 46. | Disputed. At 2147, the F/V Settler was plotted at what is designated as A2 on Agency Exhibit 16. Vol. V, Tab 117, Agency Exs. 14 & 16. At 2152, the F/V Settler was plotted at what is designated as A3 on Agency Exhibit 16. *Id.* The Header Log only provides information on the USCGC Spencer's location at one minute intervals. Vol. V, Tab 117, Respondents Ex. 1. In addition, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 59 | At 22:01, the SPENCER executed a starboard turn at 15 knots, turning 149 degrees, came around behind the SETTLER and followed on her port quarter, paralleling her course her [sic] until the 22:08 position fix, Header Log, AR v. V, Respondent's Exhibit 1, as depicted in Ouellette and Peterson Diagrams, AR v. V, Agency Exhibits 41 and 46. | Disputed. The Header Log only provides information on the USCGC Spencer's location at one minute intervals and provides no information as to the speed of the USCGC Spencer, its relative position to the F/V Settler or any position fixes on the F/V Settler. Vol. V, Tab 117, Respondents Ex. 1. In addition, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 60 | The Agency presented theoretical evidence to show that the SETTLER could have transited from point A4 to the 22:08 position, A5, if it let out its net cables, but this assumed the vessel proceeded in a straight line from A4 to the A5 position established at 22:08. AR IV at 829. | Disputed. The cited testimony makes no mention of an assumption by the Agency that the F/V Settler traveled in straight line from A4 to A5, as depicted on Agency Exhibit 16. Vol. IV, Tab 116, TR 829 generally. The USCGC Spencer plotted the F/V Settler in RGA 1 four times, at 2140, 2147, 2152 and 2157. Vol. V, Tab 117, Agency Exs. 14 and 16. Other than at the times when it was plotted, no one can accurately state the F/V Settler's position. However, at 2140, 2147, 2152 and 2157, the radar plots definitively show that the F/V Settler was in the closed area. *Id.* In addition, as the ALJ stated, "As the proponent, the Agency |

| | | established a prima facie case of the course and speed of the F/V Settler in Restricted Gear Area I, 1997 on the evening of October 16, 1997 between the hours of 2140 and 2208.  This prima facie case is supported by witness testimony and documentary evidence.  Upon establishing a prima facie case concerning the course and speed of the F/V Settler, the burden of production shifted to Respondents to rebut the evidence provided by the Agency.  The Respondents failed to show that the F/V Settler was incapable of performing the reported maneuvers and speed. The expert opinion of Professor Clifford A. Goudey concerning the performance capability and capacity of the F/V Settler is not credible." Vol. II, Tab 106 at 43.  Also, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory."  Vol. II, Tab 106 at 36. |
|---|---|---|
| 61 | A vessel proceeding directly from A4 to A5 could not have been inside of the SPENCER's turn initiated between 22:01 and 22:02, nor could the SPENCER have followed along her port quarter for a few minutes prior to 22:05, Header Log, AR v. V, Respondent's Exhibit 1, as depicted in Ouellette and Peterson Diagrams, AR v. V, Agency Exhibits 41 and 46.  AR v. III, at 70 Lines 3-6 and 119 lines 5-13. | Disputed.  The Header Log only provides information on the USCGC Spencer's location at one minute intervals and provides no information as to the speed of the USCGC Spencer, its relative position to the F/V Settler or any position fixes on the F/V Settler.  Vol. V, Tab 117, Respondents Ex. 1.  In addition, as the ALJ stated, "As the proponent, the Agency established a prima facie case of the course and speed of the F/V Settler in Restricted Gear Area I on the evening of October 16, 1997 between the hours of 2140 and 2208.  This prima facie case is supported by witness testimony and documentary evidence.  Upon establishing a prima facie case concerning the course and speed of the F/V Settler, the burden of production shifted to Respondents to rebut the evidence provided by the Agency.  The Respondents failed to show that the F/V Settler was incapable of performing the reported maneuvers and speed. The expert opinion of Professor Clifford A. Goudey concerning the performance capability and capacity of the F/V Settler is not credible." Vol. II, Tab 106 at 43.  Also, to the extent that this claim is based on Mr. Ouellette's report, the ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory."  Vol. II, Tab 106 at 36. |

| 62 | The accuracy of all radar plots on the evening of the [sic] October 16, 1997 was based on the SPENCER's DGPS, Exhibit 14 data derived from COMDAC. | Disputed. The Plaintiff provided no cite to the record to support this claim. |
|----|------|------|
| 63 | The ALJ rejected the accuracy of the DGPS and Header Log when used by Plaintiff to establish the position of the SPENCER to establish that the SETTLER could not have been on the course from A4 to A5, ALJ ruling on Respondent's Request for finding H4 holding "...the exact location of the SPENCER in the restricted gear area is unknown." AR v. II, tab 106, page 48. | Disputed. The ALJ's ruling on Respondent's Request for finding H4 is responding to the Plaintiff's attempt to utilize the Header Log to establish the USCGC Spencer's position in RGA 1 and relies on Mr. Ouellette's report and theories. Vol. II, Tab 106 at 48. The ALJ had previously found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 64 | The report of Gerald A. Ouellette, Agency Exhibit 41, accurately calculates course speed and closing aspects of the SPENCER based on the Header Log, Respondent's Exhibit 1 and radar plots, Agency Exhibit 14. | Disputed. The ALJ found that "[t]here is no reliable and credible evidence to support Mr. Ouellette's testimony and theory." Vol. II, Tab 106 at 36. |
| 65 | The Agency offered no expert opinion which justifies deviation from the sworn testimony of its agents with regard to the times and aspects of the SPENCER passing. | Disputed. The Plaintiff is making a characterization rather than a factual assertion. |
| 66 | The SPENCER did not maintain a constant radar track on target 8174 or the SETTLER, but only established discrete radar fixes during the course of the evening of October 16, 1997, AR v. V Agency Exhibit 14. | Disputed. Agency Exhibit 14 shows that the USCGC Spencer plotted the F/V Settler seven times. Vol. V, Tab 117, Agency Ex. 14. The plots at 2140, 2147, 2152 and 2158 were in RGA 1. The USCGC Spencer first became aware of a radar contact at 2105 on October 16, 1997. Vol. V, Tab 117, Agency Ex. 19. Shortly thereafter, the lookout spotted a white light on the horizon that corresponded to the radar contact. Vol. II, Tab 115, TR 38 at 22 – 23. From that point through interception of the F/V Settler, continuous visual and radar contact was maintained. Vol. IV, Tab 116, TR 864 generally; *see also*, Vol. II, Tab 106 at 6, paragraph 31. |

| 67 | The Agency's rejection of Plaintiff's proposed findings was clearly arbitrary and capricious, not supported by substantial evidence and contrary to facts accepted at the hearing from AR II Tab 106:<br>A. Respondents' Proposed Find [sic] Findings of Fact D-2, page 35<br>B. Respondents' proposed finding of fact H-2, page 47<br>C. Respondents' Proposed finding of fact H-4, page 48D. Respondents Proposed Findings of Fact H9 | Disputed. The Plaintiff is making a characterization rather than a factual assertion and has provided no cite to the administrative record to support its claims. |

**Facts established by the documents supplement to the record**

| 68 | The document of a Fifth Plot, identified as 8174, inside RGA1, Exhibit A to Plaintiffs [sic] motion to supplement the record is a copy of a CIC record produced by the Agency during proceedings below, Affidavit of Harriet Diedreksen [sic]. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. The Defendants dispute the Plaintiff's characterization of the information contained in this document. On the face of the document, it is impossible to know the location of the plotted contact, because it is a relative position. In order for the numbers on the document to have any meaning they must be considered in conjunction with other evidence of the location of the vessel plotting the target. However, this document provides no information on the vessel making the plot, nor provides a location for the vessel making the plot. |
| 69 | This Fifth Plot by CIC of a target in RGA1 was not reviewed by the Agency prior to or offered at hearing, and was never reviewed by the Agency's expert, nor was it provided to the ALJ, AUSA Johnson letter. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. First, the Defendants dispute that there is any evidence of a "Fifth Plot by CIC of a target in RGA1". Second, the Defendants dispute that the AUSA Johnson letter indicates whether or not the Agency or its expert(s) considered the information |

|  |  | prior to the hearing. Third, the AUSA Johnson letter states that the Plaintiff did not offer the information into evidence and is silent as to whether or not the Defendants offered the letter into evidence. Nonetheless, the Defendants admit that they did not offer the letter into evidence. |
|---|---|---|
| 70 | The document evidences that at 10:19 on October 16, 1997; [sic] COMDAC reported a target inside at a range of 1.4 nm, and bearing of 131° true. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. First, the document is facially incomplete and internally inconsistent; therefore it is impossible to rely on it factually. Second, the claim is insufficiently specific to be evaluated fully. |
| 71 | CIC assigned the track identifier at 21:05 on the evening of October 16, 1997. AR v. V, Agency Exhibit 19. | Disputed. This claim is overly vague as to which track identifier it references and therefore cannot be accurately evaluated for veracity by the Defendants. |
| 72 | The CIC plot referenced on the Fifth Plot was taken by CIC from the SPENCER on the evening of October 16, 1997 at 22:19 pm, CIC plot. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. First, there is no evidence that this document was created by CIC. Second, there is no evidence that this document references information from the USCGC Spencer. Third, there is no evidence that the information on this document is from 2219. In fact, in the "time" column on the document, the time "1019" is marked. The U.S. Coast Guard uniformly utilizes military time. In military time, "1019" refers to 10:19 a.m., and "2219" refers to 10:19 p.m. Fourth, the "Fifth Plot" is meaningless without the evidence to prove the information above. |
| 73 | A plot of the range and bearing indicates that the Fifth Plot was inside RGA1 | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. The Defendants also dispute the Plaintiff's characterization of the information contained in this |

| | | document. On the face of the document, it is impossible to know the location of the plotted contact, because it is a relative position. In order for the numbers on the document to have any meaning they must be considered in conjunction with other evidence of the location of the vessel plotting the target. However, this document provides no information on the vessel making the plot, nor provides a location for the vessel making the plot. |
|---|---|---|
| 74 | The radar target was calculated by COMDAC to have a course of 173 true, CIC plot. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. The Defendants also dispute the Plaintiff's characterization of the information contained in this document. On the face of the document, it is impossible to know the location of the plotted contact, because it is a relative position. In order for the numbers on the document to have any meaning they must be considered in conjunction with other evidence of the location of the vessel plotting the target. However, this document provides no information on the vessel making the plot, nor provides a location for the vessel making the plot. |
| 75 | A vessel on a course from A4 to the Fifth Plot inside RGA1 would have been on a course of 173° true, Affidavit of Gerald A. Ouellette. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. It is impossible to know the location of the plotted contact, because it is a relative position. In order for the numbers on the document to have any meaning they must be considered in conjunction with other evidence of the location of the vessel plotting the target. However, this document provides no information on the vessel making the plot, nor provides a location for the vessel making the plot. |
| 76 | The target reported in the newly discovered document sates [sic] it is contact 8174, and was proceeding at a heading 173 at 10:19 (believed to be 22:19), CIC record. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. The Defendants also dispute |

| | | the Plaintiff's characterization of the information contained in this document. On the face of the document, it is impossible to know the location of the plotted contact, because it is a relative position. In order for the numbers on the document to have any meaning they must be considered in conjunction with other evidence of the location of the vessel plotting the target. However, this document provides no information on the vessel making the plot, nor provides a location for the vessel making the plot. Also, there is no evidence that the information on this document is from 2219. In fact, in the "time" column on the document, the time "1019" is marked. The U.S. Coast Guard uniformly utilizes military time. In military time, "1019" refers to 10:19 a.m., and "2219" refers to 10:19 p.m. Further, the Defendants object to the Plaintiff's characterization that this document is "newly discovered." The Defendants produced this document to the Plaintiff on August 10, 2001, prior to both portions of the administrative hearing. *See* Plaintiff's Motion to Supplement Record at 2-3; *see also* Exhibit C to Plaintiff's Motion at 2. The Defendants have been in possession of this document for over three and a half years and throughout the entire administrative process. *Id.* |
|---|---|---|
| 77 | COMDAC calculated the course of the target at A4 as 173°, AR v. V Agency Exhibit 14. | Disputed inasmuch as Agency Exhibit 14 does not identify a radar plot as A4 nor makes any reference to the source of its information. Vol. V, Tab 117, Agency Ex. 14. |
| 78 | At 22:48, the SPENCER left the side of the SETTLER and proceeded directly at the position of the Fifth Plot inside RGA1 noted on the CIC Log. See AR v. V Header Log, Respondent's Exhibit 1 and Affidavit of Gerald A. Ouellette. | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record. In addition, the Defendants dispute the claims raised in this paragraph. At 2248, the USCGC Spencer was actively engaged in the preparation for and subsequent boarding of the F/V Settler. In fact, at 2248, Law Enforcement Phase One was set and the Captain decided to board the F/V Settler. Vol. V, Tab 117, Agency Ex. 26. At 2257, Law Enforcement Phase Two was set and the boarding party proceeded to board the F/V Settler. *Id.* |
| 79 | The Agency has been offered the opportunity to review the CIC documents and reconsider its | Disputed. The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material |

| | | |
|---|---|---|
| | decision, and has declined to do so, AUSA Johnson Letter. | not included in the administrative record.  In addition, the Defendants dispute the claims raised in this paragraph.  The Plaintiff has no support for its claim that the Defendants declined to review the document and reconsider its decision.  The letter from AUSA Johnson makes no such statement, but rather states that "[t]he document does <u>not</u> exonerate the F/V Settler from illegal fishing charges." (emphasis in original).  In addition, the letter states that "[t]his document does not persuade this office that there was a defect in the administrative proceedings in this case." |
| 80 | The target detected by CIC is the vessel that was plotted at points A1, A2, A3 and A4, Affidavit of Gerald A. Ouellette. | Disputed.  The Defendants object to the supplementation of the record and to the Court's consideration of any alleged facts based on material not included in the administrative record.  In addition, the Defendants dispute the claims raised in this paragraph.  The Defendants dispute the Plaintiff's characterization of the information contained in this document.  On the face of the document, it is impossible to know the location of the plotted contact, because it is a relative position.  In order for the numbers on the document to have any meaning they must be considered in conjunction with other evidence of the location of the vessel plotting the target.  However, this document provides no information on the vessel making the plot, nor provides a location for the vessel making the plot. |

[1] The Plaintiff's citations are inconsistent and lack uniformity in style.  The Defendants attempt to recreate the Plaintiff's citations exactly, to avoid further confusion.