UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRONTIER FISHING CORP., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>DONALD EVANS, Secretary of the )<br>UNITED STATES DEPARTMENT OF )<br>COMMERCE; and CONRAD C. )<br>LAUTENBACHER JR., Under Secretary )<br>for Oceans and Atmosphere / Administrator, )<br>)<br>Defendants. )<br>)<br>_____) | CIVIL NO. 04-11171-DPW |

## GOVERNMENT'S AMENDED OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

The government opposes Plaintiff's Motion for Assessment of Fees because the government's position in this action was "substantially justified." In addition, Plaintiff is not entitled to assessment of fees because its submission to this Court lacks adequate documentation of reasonable fees, and Plaintiff's counsel is not entitled to enhancement of his fee amount.

## I. THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED

**A. Applicable Law**

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), provides,

> [A] court shall award to a prevailing party other than the

1

> United States fees and other expenses, . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[1]

The EAJA imposes liability upon the government for attorneys' fees and expenses of a prevailing party in litigation only if the government position was not "substantially justified." DeAllende v. Baker, 891 F.2d 7, 8 (1st Cir. 1989). The burden is on the government to demonstrate that its position was substantially justified; Shock v. United States, 254 F.3d 1, 4 (1st Cir. 2001); by a preponderance of the evidence. Sierra Club v. Secretary of the Army, 820 F.2d 513, 517 (1st Cir. 1987). The question addressed is whether the government's position "had a basis in law and fact and to a degree that would satisfy a reasonable person." Shock, 254 F.3d at 4. The test of reasonableness "in the precincts patrolled by the EAJA is different from that applied for purposes of determining whether agency action or inaction is "reasonable" or "unreasonable," i.e., arbitrary and capricious under, say, the Administrative Procedure Act." Sierra Club, 820 F.2d at 517. The substantial justification requirement "establishes a clear threshold for determining a prevailing party's eligibility for fees," focusing on whether there was "governmental misconduct giving rise to litigation." Comm'r of INS v. Jean, 496 U.S. 154, 165 (1990). The government need not show that its position was "justified to a high degree." Shock,

---

[1] The United States is defined as "any agency and any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C).

254 F.3d at 5.  It must show that its position was "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person."  Id. (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  The "reasonableness" test "represents a middle ground between an automatic award of attorneys' fees to a prevailing party and an award made only when the government's position is frivolous."  United States v. Yoffe, 775 F.2d 447, 450 (1st Cir. 1985).

The mere fact that the opposing party prevailed on a claim "is not dispositive on the issue of substantial justification."  Shock, 254 F.3d at 4.  Indeed, "[m]aking the outcome of the case determinative would virtually eliminate the 'substantially justified' standard from the statute."  Sierra Club, 820 F.2d at 517.  Nor does it establish a presumption.  See Pierce, 487 U.S. at 569.  "An exercise of independent judgment is essential to determine whether an EAJA award is warranted; the answer is not 'wedded to the underlying judgment on the merits.'"  Sierra Club, 820 F.2d at 517 (quoting Fed. Election Comm'n v. Rose, 806 F.2d 1081, 1087 (D.C. Cir. 1986)).[2]

---

[2] EAJA fees have been imposed where the government has failed to cite controlling circuit law.  Thangaraja v. Gonzales, 428 F.3d 870, 874 (9th Cir. 2005); Johnson v. Gonzales, 416 F.3d 205, 211 (3rd Cir. 2005).  EAJA fees have been imposed in this Circuit where there were "palpable indicia that the government's stance was shaky from the start," where the government "abjured the presentation of any evidence during the EAJA phase of the litigation."  Sierra Club, 820 F.2d at 519-20 (finding agency unreasonable in insisting that a project did not require the preparation of an Environmental Impact Statement when several other federal agencies had advised that filing of a Statement was required and agency had ignored "indirect effects" of the project despite clear law to the contrary).

**B.  The Court's Order Of Remand Was Narrowly Based**

This Court upheld the agency decision, with the exception of one "discreet point" in the ALJ's rulings, the ALJ's findings relating to the Plaintiff's "second impossibility theory." 2006 WL 897138 at 13-14.  The Court remanded the case to the agency on the discreet point of reconciling inconsistent ALJ rulings regarding the relative positions of the U.S. Coast Guard Cutter Spencer ("USCGC SPENCER") and the F/V Settler during the ten minute period of time between 2158 and 2208 (military time), just before the Coast Guard officers boarded the F/V Settler, on October 16, 1997.  Plaintiff uses the inconsistent ALJ rulings regarding this period of time to contend that the Coast Guard was plotting a "phantom vessel" in Restricted Gear Area I (the "RGA"), the area in which fishing with mobile gear was prohibited.  Therefore, Plaintiff argues, the Coast Guard never proved that the F/V Settler was in the RGA.

The Coast Guard plotted the location of a vessel with trawling lights from 2140 to 2208.  The Coast Guard officers testified that they plotted the position of that vessel at five points in time, 2140, 2147, 2152, 2158, and 2208.  Id. at 10.  The position of the F/V Settler at 2140 was termed A1, the position of the F/V Settler at 2147 was termed A2, at 2152 was termed A3, at 2158 was termed A4, and at 2208 termed A5.  At A5, the CoastGuard intercepted the F/V Settler.  Positions A1 through A4 were inside of the RGA.[3]  Plaintiff's "second impossibility theory," goes to the <u>A4 to A5 segment only</u>, <u>time</u>

---

[3] Plaintiff admits that the F/V Settler was fishing during the time period 2140 through 2208.

period 2158 to 2208. The Court held that there were inconsistencies in the ALJ's evidentiary rulings on the A4 to A5 segment that the ALJ did not address. Id. at 10. The Court ruled that there was an inconsistency between, on the one hand, the ALJ's finding, based on the radar log, that at 2158 the F/V Settler was at point A4, and, on the other hand, the ALJ's finding (based upon Commander Diaz's testimony) that at 2200 the F/V Settler was 1,000 yards from the USCGC SPENCER. The Court concluded that this movement would have required the F/V Settler to travel at a speed in excess of 15 knots during the two minute interval. 2006 WL 897138 at 12. Significantly, however, the Court also noted that Commander Diaz had testified the 2200 time was merely an approximation, 2006 WL 897138 at 15, n.17, and that the agency's expert Dr. Peterson had calculated that the F/V Settler could have traveled from point A4 and reached a location 1,000 yards from the USCG SPENCER at 2202, traveling at a speed of 5.7 knots. Id. at 15 n.18.[4] Implicitly, then, the Court recognized that the 2200 time recorded by Commander Diaz could well have been several minutes off, and that a finder of fact could reasonably conclude that the F/V Settler was in fact within the RGA at point A4 at 2158. In sum, the flaw found in the ALJ's analysis was quite technical in nature and not one that undermines the agency's basic position that the F/V Settler was fishing in the RGA. The same 2200 observation gives rise to the other technical flaw the Court found in the ALJ's analysis, relating to the supposed turn taken by the USCGC SPENCER

---

[4] The Court did not find fault with the ALJ's conclusion that the F/V Settler could have traveled at speeds of up to 6 knots with its fishing gear employed. Id. at 10-11.

across the stern of the F/V Settler.  Id. at 13.  Taking into consideration reconciliation of the inconsistent findings, the ALJ was ordered is to "purg[e] the inconsistency from the evidentiary finding upon which he relies."  Id. at 10.

      The Court's Order is very narrow given the extent of evidence in the case.  The Court did not reverse the agency decision.  Id. at 13.  Indeed, the court held that its remand "<u>does not exonerate the F/V Settler of the charges</u>."  Id. at 10.  The Court raised no additional objections to ALJ's findings or objections to the sufficiency of the evidence supporting the agency's case. The Court noted that the agency had sufficient evidence to establish a prima facie case.  Id. at 9.  The Court adopted the applicable law set forth in the agency's pleadings.  Id. at 4.  It explicitly approved the legal standards applied by the ALJ.  Id.  It explicitly approved as supported by substantial evidence "the ALJ's conclusion that NOAA correlated the visual and radar readings" in positioning the location of the F/V Settler.  Id. at 9.   It explicitly held that "the ALJ's conclusion that the radar targets in RGA 1 were the F/V Settler were reasonable."  Id. at 10.  The Court rejected the other defenses raised by Plaintiff.  It held that the agency's conclusions were well-founded regarding the speed and maneuvers that the F/V Settler was capable of, as well as the agency's determination that Plaintiff's expert on this subject "did not have sufficient information to reliably determine the capacity and capability of the F/V Settler."  Id. at 9-10.  It concurred with the ALJ that the fact that the Coast Guard never reported seeing the red port side lights on the F/V Settler between points A2 and A3 "does not vitiate NOAA's entire case."  Id. at 9.  It noted that Plaintiff's expert, Dr.

Ouellette, conceded that Plaintiff could not prove what object was being detected by the Coast Guard in the RGA if it were not the F/V Settler.  Id. at 9.  It noted that there was "no evidence supporting the existence of other vessels in RGA I." Id. at 15.  It noted that there was no evidence supporting Plaintiff's theory that the USCGC SPENCER'S radar was detecting "high fliers" rather than the F/V Settler.  Id. at 15 n.15.   In fine, while the Court was concerned about the inconsistencies of the ALJ's findings regarding the passage of the F/V Settler from A4 to A5, the Court upheld the agency with respect to the absence of any evidence or explanation corroborating the Plaintiff's argument that there was another vessel in the RGA.  Id. at 9, 15.  The Court also upheld the agency with respect to its evidence identifying the F/V Settler in the A1 to A4 segments.

In addition, the Court denied Plaintiff's Motion for Supplementation of the Administrative Record, on the same grounds on which the agency opposed it.  Id. at 5. The Court also rejected Plaintiff's motion to strike the agency's expert testimony of Carl Setterstrom and Marine Officer Neelon, holding that the ALJ applied the correct law and properly admitted their expert testimony.  Id. at 8.  The Court appeared to hold that Plaintiff's arguments with respect to additional evidence and exclusion of evidence were baseless.  Id. at 7-8.

In context, the narrow and highly technical basis for remand in this case is not the grist for the mill of EAJA fees.  The inconsistency identified by the Court does not reveal a frivolous case or a case without serious evidence.  The remand was not based on the usual reasons for award of EAJA fees, i.e., disregard of controlling opinion; Thangaraja,

428 F.3d at 874, Johnson, 416 F.3d at 211. There is no string of cases going the other way. Shock, 254 F. 3d at 5.  There is no disregard of cogent agency dissent; Sierra Club, 820 F. 2d at 519-520.  Nor a feeble factual basis.  Pierce, 487 U.S. at 560.   The Court does not conclude that the agency disregarded prior court decisions and explicitly held that "there was no evidence of bad faith on the part of NOAA." 2006 WL 897138 at 6. Accordingly, looking at the government's case as a whole, the government had "substantial justification" and assessment of EAJA fees against it is inappropriate.[5]

### C. There Is Other Evidence in the Record Supporting The Location of the F/V Settler Within the RGA

There is evidence in the record showing that the F/V Settler was the vessel identified by the Coast Guard inside the RGA.

**(1)  Commander Diaz' Testimony Regarding Time**

The basis for the Court's remand appears to arise from the testimony of Coast Guard Commander Diaz of the USCGC SPENCER regarding his recollections of relative vessel positions and time as the F/V Settler moved from A4 to A5.  As noted by the Court, the ALJ's rulings on the Respondents' proposed findings held that Commander Diaz had approached the F/V Settler at 2200, a time that would have had the F/V Settler

---

[5]  Plaintiff presents no argument regarding lack of substantial justification, but, instead, merely states that the government rejected "arithmetic computation establishing that the F/V Settler could not have been in locations alleged. . . ." Motion for Assessment at 3.

moving in excess of its capacity.  However, the evidence in the administrative record is that Commander Diaz testified that his recollection of the relevant positions of the two vessels at any given time was approximate.  As highlighted in NOAA's pleadings to the ALJ, "Commander Diaz testified repeatedly during both stages of the hearing that this statement was an approximation of both time and distance.  <u>See</u> TR 69 at 25 and 70 at 1-2; <u>see</u> also TR 72 at 6-8; TR 118-19 generally; TR 148 at 13-15; TR 150-51 generally; TR 157 at 7-12; TR 592 at 17-24; TR 642, 646 at 4-7; TR 865 at 2-13; TR 877 at 24-25 and 878 at 1-3."  AR III, Tab 115.   Indeed, the Court notes the approximate nature of Commander Diaz's recollection where it quotes Commander Diaz's testimony, "the 2200 time is, quite frankly, an approximation in my mind because I put down 2200. .... It's sort of a round number. I put it approximately."  2006 WL 897138 at 15 n. 17

### (2) The Coast Guard Tracked the Lighted Vessel Visually and By Radar And There Was No Evidence of Another Vessel In The Area

The visual observations of the Coast Guard officers from first sight of a ship's trawling lights to the boarding of the F/V Settler show that the F/V Settler was the vessel plotted in the RGA.  Commander Diaz testified that he saw a green over a white light on the horizon at 2130.  TR 42, 859.  A green over white light is required to be displayed by any fishing vessel trawling at night.  TR 40.  He continued to follow the light visually as the USCGC SPENCER moved toward it.  TR 63, 171, 864.  The visual observation of the light coincided with the contact plotted by the radar screen.  TR 67, 172.  Throughout the pursuit of the fishing vessel and coordination of the position fixes, the officers on the

bridge of the USCGC SPENCER, especially Commander Diaz, remained alert to assessing the overall situation on the water; Vol. III, Tab 115, TR 64 at 16 – 23, and "there were no other radar contacts and no other visual contacts between the time in question, 2130 to the 2208 time frame. Id. At 173. There was one light and one radar contact." Vol. IV, Tab 116, TR 585, 861 at 20–23.[6] Other Coast Guard officers testified that they made visual contact with the green over white light of the vessel in the RGA beginning at 2140 and that visual observations of the vessel continued until the USCGC SPENCER approached the F/V Settler and boarded it. TR 39, 172. Ensign Craig Toomey testified that he observed no difference between the location of the vessel as visually observed and its location on the radar screen. He made no observations of any other ship. TR 173-74. Quartermaster Matthew Coppola saw only the lights of one contact and no other vessels on the horizon. AR 205-10. From the point of first observation through interception of the F/V Settler, continuing visual and radar contact was maintained on the detected vessel. Vol. IV, Tab 116, TR 864. The ALJ found that the Coast Guard made no radar contacts in the RGA between 2130 and 2208 other than the F/V Settler. 2006 WL 897138 at 8. As noted, the Court found that the ALJ's

---

[6] As noted, Plaintiff argues that the Coast Guard was observing "high-fliers," instead of the F/V Settler through its radar, but the ALJ noted that Captain Valente and Commander Diaz agreed that a trained radar operator could tell the difference between a high-flyer and a ship. AR IV, TR 585-86. The Court also noted that Plaintiff's expert, Dr. Ouellette, admitted that there was no evidence that the Coast Guard confused a clutter of high-fliers was confused for the F/V Settler in the RGA prior to 2208. 2006 WL 897138 at 4, 14-15 n. 15.

conclusion that NOAA correlated the visual contacts and radar readings on the detected vessel was supported by substantial evidence. The Court also found that there was no evidence supporting the existence of other vessels in RGA1. 2006 WL 897138 at 8, 15.

### (3) The Testimony of NOAA's Expert Dr. Peterson

Agency expert Dr. Peterson, whom the ALJ qualified as an expert in navigation systems and vessel positioning based on those navigation systems; Vol. III, Tab 115, TR 263-264; testified that the radar system and other positioning equipment on the USCGC SPENCER were functioning normally and that the radar signals correctly located the F/V Settler inside the RGA. TR 278. Regarding the Court's finding that the ALJ's ruling that the USGCC SPENCER at 2200 was 1000 years away from the F/V Settler was inconsistent with the position and movement of the two vessels, Dr. Peterson used only a slightly later time of 2202 and calculated that the F/V Settler could have reached a position of 1000 yards from the USCGC SPENCER traveling at 5.7 knots, 2006 WL 897138 at 13, 15 n.18, a speed within the F/V Settler's capacity. Thus, Dr. Peterson's testimony makes it clear that there is nothing about the course of events between A4 and A5 that absolved the F/V Settler of fishing within the RGA. Dr. Peterson testified that, in his opinion, there was no possibility that the F/V Settler was operating outside of the RGA. TR 291-92.

### D. The Agency Proceedings Were Consistently in Favor of NOAA.

The Court is required to take prior proceedings into account in determining

whether the government had substantial justification for its case. Sierra Club, 820 F.2d at 518. The prior proceedings in this case, conducted at the agency level, concluded in favor of the agency, with determinations that the F/V Settler was fishing illegally in a prohibited zone. Ab initio, the agency assessed sanctions against Frontier Fishing – the owner of the F/V Settler – and Manuel Valente, Captain of F/V Settler. The basis of the assessment was investigative work conducted by the United States Coast Guard, a separate law enforcement agency. Thereafter, the agency conducted a four-day trial type administrative hearing before an Administrative Law Judge ("ALJ"), who held for the agency. Thereafter, Frontier Fishing and Captain Valente requested discretionary review of the ALJ's decision by the NOAA Administrator. After reviewing the briefs of the parties, the Administrator declined review, upholding the ALJ's decision. The agency prevailed at the prior proceedings and came to this Court as a respondent, not itself seeking judicial review. Thus, the posture of the case argues in favor of a finding of substantial justification. See Sierra Club, 820 F.2d at 519.

Accordingly, the government's evidence that the Coast Guard was plotting the movements within the RGA of the F/V Settler and not another vessel, was extensive, based not only on technical positioning data, but also on expert testimony confirming the validity of the gathering and interpretation of the technical positioning data, and on eyewitness observation of the white and green lights of a trawler until that trawler was identified visually and boarded. This evidence pertains to all of the segments, A1 to A5 of the Coast Guard's plotting of the F/V Settler's position. Taking Commander Diaz's

testimony in the record that the time of 2200 was an approximation and not a time certain, the government's evidence regarding the last segment of the F/V Settler, from A4 to A5 is consistent, and there is substantial evidence showing that the vessel being tracked and visualized by the Coast Guard was the F/V Settler.

## II. THE AMOUNT OF FEES CLAIMS IS UNFOUNDED

### A. Plaintiff's Records Lack the Documentation Required for Reasonable Fees

The records submitted by Plaintiff are inadequate to justify the EAJA fees that it claims. EAJA requires that an application for fees include "an itemized statement from any attorney or expert witness representing or appearing in behalf of the party, stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412 (d)(1)(B). Comm'r, INS v. Jean, 496 U.S. 154, 158 (1990). Plaintiff has the burden of providing all evidence required. Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 527 n.11 (1st Cir. 1991).[7] An "independent inquiry by the trial judge is a vital component of the fee-setting process." Weinberger, 925 F.2d at 527. The First Circuit has "painstakingly delineated the specific documentary preconditions to fee awards, requiring litigants to submit a 'full and specific accounting' of the tasks performed, the dates of performance, and the number of hours spent on each task." Id. See also, Souza v. Southworth, 564 F.2d 609, 612 (1st Cir. 1977) (requiring attorneys

---

[7] The evidence must consist of contemporaneous time records. Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992).

submit "full and specific accounting" including the "dates and the nature of the work performed during the hour or hours in question"). Entries containing only generalities must be "substantially discounted." Lipsett v. Blanco, 975 F.2d at 938.

If this Court determines that Plaintiff is entitled to fees in this case, the Court is required to consider the reasonableness of the fees requested. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Ab initio, "fees need not be bestowed if the plaintiff's apparent victory is 'purely technical or de minimus.'" Coutin v. Young & Rubicam, 124 F.3d 331, 339 (1st Cir. 1997). Moreover, "attorneys' fees should not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable claims." Id. If a party has achieved only partial or limited success in its claims, the fees expended on the litigation as a whole may be an excessive amount. Hensley, 471 U.S. at 435.

> This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit. . . . The critical factor is the degree of success obtained.

Id. Because the EAJA was designed to facilitate challenges to unreasonable government action, it would contravene the purpose of the Act to require the government to bear the expense of defending its reasonable positions. McDonald v. Sec'y of HHS, 884 F.2d 1468, 1479 (1st Cir. 1989).

Plaintiff sought, in bringing this action, "to set aside the agency's finding of a violation," Complaint at 3, and "to reverse the agency's decision below." Memorandum in Support of Plaintiff's Motion for Summary Judgment at 20. However, Plaintiff was

14

unsuccessful in that regard.  What it succeeded in achieving was a remand to reconsider a relatively narrow portion of the agency's case, not a reflection of success on the merits. Plaintiff was "reaching for more than that."  See McDonald, 884 F.2d at 1479.  Because Plaintiff failed to achieve its most important goal and failed to achieve substantive relief on its claims, this Court is required to tailor EAJA fees to the significance of the relief achieved.  Id. (citing Hensley, 461 U.S. at 435).  Only reasonable fees may be assessed against the government, and the amount assessed must take into account the fact that Plaintiff did not prevail on important claims that it asserted.  See Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006) (holding plaintiff may be entitled to a fraction of fees claimed under the Privacy Act because she failed to prevail on her most consequential claims) (citing Hetzel v. County of Prince William, 89 F.3d 169, 173-74 (4th Cir. 1996); Johnson v. Gonzales, 416 F.2d at 209 n. 5 (fact that plaintiff failed to succeed on one of his claims relevant to determination of amount of fee award).  Moreover, the Court must take into account that Plaintiff is claiming reimbursement for fees for its failed attempts to introduce new evidence into the record and for its failed attempt to exclude testimony by NOAA experts admitted below.[8]

     A significant portion of the fees requested by Plaintiff is unreasonable because it relates to claims upon which Plaintiff did not prevail.  It would be impossible for Plaintiff

---

[8] The court may award fees for claims that are not distinct from and are related to prevailing claims such that they cannot be separated from prevailing claims.  Hensley, 461 U.S. at 434-35.

to argue that those claims were not substantially justified. The attorneys representing Plaintiff at the administrative level did not prevail on any claims and are not entitled to attorney's fees. Indeed, this Court specifically held that the agency established a prima facie case at the administrative level. 2006 WL 897138 at 9. In this Court, Plaintiff prevailed with respect to a remand on its "second impossibility defense" but did not prevail on its other claims, including its extensive motions to supplement evidence and to exclude some of the agency's evidence.

The documents submitted by Plaintiff in support of its Motion for Assessment of Fees do not provide a basis for ascertaining which fees relate to successful claims upon which Plaintiff prevailed and which do not. Accordingly, they do not provide a basis for the Court to segregate the fees relating to unsuccessful claims and arrive at a reasonable figure for Plaintiff's fees. Plaintiff seeks reimbursement for all fees billed by Stephen M. Ouellette to Plaintiff, for a total of $32,156.97 at $125 per hour (Plaintiff seeks a higher hourly rate for a total of $40,809.47. See Section B, below). Plaintiff's Motion for Assessment of Fees at 6 and Exhibit D. The documents submitted by Plaintiff in support of these fees are too general and imprecise to ascertain what Ouellette was billing for. They explain a billed fee for, for example, "Draft motion/memo," "Preparing Materials for Brief," "Editing motion," and "Drafting Pleadings."[9] Accordingly, they cannot

---

[9] There are several exceptions, where the record reflects, for example, "supplementation to the record." Plaintiff's Motion for Assessment of Fees, Exhibit D at 3/24/05.

provide a basis for this Court to segregate the fees charged for the prevailing claim and the unsuccessful claims and, accordingly, provide no basis for assessment of reasonable fees against the government.[10]

## B. <u>**Plaintiff is Not Entitled to Enhancement of Fees**</u>

Plaintiff requests that this Court grant an enhancement of attorneys' fees to an amount above presumptive $125 per hour attorneys fees prescribed by the EAJA. 28 U.S.C. § 2412 (d)(2)(A). EAJA provides that "attorneys fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." <u>Id</u>. Plaintiff's counsel cannot meet this test.

For enhancement of attorneys' fees in excess of the statutory amount, a prevailing party must establish that counsel has distinctive knowledge or specialized skill that was necessary in the litigation, above and beyond general legal competence. <u>Pierce</u>, 487 U.S. at 572. The party must also establish that there is a "limited availability of such qualified attorneys for the proceedings involved." <u>Id</u>. In <u>Atlantic Fish Spotters Assn. v. Daley</u>, 205 F.3d 488, 490 (1st Cir. 2000), the First Circuit refused to permit an enhancement of attorneys' fees for a fisheries law specialty in an action challenging a NOAA fishing regulation, ruling that it was unestablished that counsel with distinctive knowledge or a

---

[10] There are, in addition, some anomalous fees for experts who did not appear in the case, such as DeAlteris Associates, whose principal's opinion Plaintiff sought and failed to introduce into this proceeding.

"highly rarefied skill" was needed to conduct the litigation, and it had not been shown that the availability of such distinctive knowledgeability was limited. See <u>Johnson v. Gonzales</u>, 416 F.3d at 66 (no EAJA fee enhancement for experienced INS attorney); <u>Rueda-Menicucci v. INS</u>, 132 F.3d 493, 496 (9th Cir. 1997) (expertise in immigration law not specialized skill that had limited available of qualified attorneys); <u>Thangaraja</u>, 428 F.3d at875 (litigation specialist in INS cases not entitled to enhanced fees).

In this case, the work of counsel for Frontier Fishing does not reflect highly specialized expertise. Moreover, counsel has not even attempted to establish that required specialized expertise is needed in the case and that such expertise is of limited availability. Indeed, the records of the case reflect that not one but four attorneys have represented Plaintiff at different times, indicating the availability of the appropriate counsel.

## **CONCLUSION**

For the foregoing reasons, Plaintiff is not entitled to EAJA fees in this action Should this Court determine that EAJA fees are appropriate, Plaintiff would not be entitled to EAJA fees because it has failed to provide the documentation required by law. Accordingly, the government requests that Plaintiff's motion be denied.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By: /s/ Anita Johnson
ANITA JOHNSON
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617)748-3266

Of Counsel:

Alexa Cole
Enforcement Attorney
Office of General Counsel
Nat'l Oceanic and Atmospheric Administration
8484 Georgia Ave, Suite 400
Silver Spring, Md. 20910
(301) 427-2202

Certificate of Service

I hereby certify that the foregoing has been served upon counsel for Plaintiff, Stephen M. Ouellette, 163 Cabot Street, Beverly, MA 01915, by electronic transmission, on this twelfth day of June 2006.

/s/ Anita Johnson